Dennis L. WAGSTAFF, Petitioner,

v.

## DEPARTMENT OF EMPLOYMENT SECURITY and Department of the Air Force, Respondents.

No. 900436–CA.

Court of Appeals of Utah.

Feb. 6, 1992.

---

Michael E. Bulson (argued), Utah Legal Services, Inc., Ogden, for petitioner.

R. Paul Van Dam, State Atty. Gen. and Lorin Blauer (argued), Sp. Asst. Atty. Gen., Dept. of Employment Sec., Salt Lake City, for respondent Dept. of Employment Sec.

Dee V. Benson, U.S. Atty., Robert H. Wilde (argued), and Clare A. Jones, Sp. Asst. U.S. Attys., Midvale, for respondent Dept. of the Air Force.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

ORME, Judge.

Petitioner, a former Air Force employee discharged for drug use, challenges a decision of the Board of Review of the Industrial Commission denying him unemployment compensation benefits. Petitioner claims that, since Air Force disciplinary regulations in effect at the time of his drug use did not sanction discharge of first-time offenders, he was not terminated for just cause. We disagree and affirm.

## FACTS

Petitioner, Dennis L. Wagstaff, began working at Hill Air Force Base (HAFB) as a store checker in 1978. After receiving several promotions and a "secret" security clearance, Wagstaff became a jet aircraft hydraulic mechanic. After nearly twelve years as an employee at HAFB, Wagstaff's work record was unblemished.

In July 1989, the Air Force Office of Special Investigations (OSI) received information that civilian maintenance personnel at HAFB were using illegal drugs both on and off the base. OSI immediately initiated an investigation into the alleged drug use. As a result of that investigation, several civilian employees were apprehended for possession, use, and distribution of controlled substances. They were immediately removed from their employment on the base. Several of Wagstaff's co-workers were among this group.

Although the OSI investigation did not turn up any tangible evidence concerning

Wagstaff, according to an OSI report several of Wagstaff's co-workers implicated him in the illegal use of drugs. Consequently, in October 1989, OSI called Wagstaff in for questioning. Under OSI examination, Wagstaff admitted using drugs on one occasion while employed at the base. According to Wagstaff, in June or July, 1989, during a lunch break, he went with several of his co-workers to a park in Clearfield where someone produced a small bag of cocaine, which they all snorted. Wagstaff maintained, however, that aside from that one incident, and trying marijuana in high school some twenty years earlier, he had never used drugs. Following his interview with OSI, Wagstaff voluntarily submitted to a urinalysis. The test proved negative for drug metabolites.

Based on Wagstaff's admission concerning the incident in the park, and apparently on implications of other illegal drug use contained in the OSI report, the Air Force terminated Wagstaff's employment in January 1990. After his removal, Wagstaff applied for unemployment benefits through the Department of Employment Security. Because the Department found the Air Force terminated Wagstaff for just cause, it denied his claim for benefits. Wagstaff challenged the initial decision and requested a formal hearing.

At the formal hearing before an administrative law judge,[1] Wagstaff admitted participating in the lunchtime cocaine incident at the park, but denied any other illegal drug use, and claimed that the park incident was a one-time indiscretion. To support its argument that Wagstaff's use of cocaine at the park was not a one-time affair, the Air Force introduced the OSI report through the testimony of one of several OSI investigators who participated in the report's preparation. The Air Force failed, however, to produce at the hearing the two co-workers who had implicated Wagstaff in other incidents of alleged drug use.

Because the administrative law judge found that the Air Force did not adequately establish the culpability element of a "just cause" discharge, he reversed the Department's initial decision. The judge found that despite Wagstaff's knowledge that his use of cocaine during his lunch break violated Air Force standards, no actual or even potential threat to the Air Force or its rightful interests was posed, as required to establish culpability and thereby justify denial of unemployment benefits. According to the judge's findings, the lack of a real threat was evidenced by, inter alia, the fact that the Air Force allowed Wagstaff to continue working for at least six months following the alleged drug use and for several months after serious drug charges were leveled against him based, in part, on his own admission. Consequently, the administrative law judge concluded that Wagstaff's termination was not for just cause, and, in accordance with Utah Code Ann. § 35–4–5(b)(1) (Supp.1991) and the applicable administrative rules, he should not have been denied benefits.

The Industrial Commission's Board of Review, by a 2–1 vote, reversed the administrative law judge. Wagstaff now appeals that decision, claiming that (1) the Board erroneously considered inadmissible hearsay evidence when reaching its decision, (2) Wagstaff's conduct was not sufficiently culpable to bring him within the "just cause" rubric, and (3) due to the leniency of the disciplinary scheme existing at the time of his drug use, Wagstaff's actions did not satisfy the "knowledge" element of a just cause termination.

## STANDARD OF REVIEW

Wagstaff's claim hinges in large part on the Board's construction of the "just cause" proviso. The Utah Supreme Court recently held that where "there is a grant of discretion to [an] agency concerning the language in question, either expressly made in the statute or implied from the statutory language," the agency is entitled

---

1. The Department's hearing officers were previously titled appeal referees, but they were routinely referred to as administrative law judges.

This usage has now been formalized. *See* Utah Code Ann. § 35–4–10(c)(1) (Supp.1991); 1990 Laws of Utah ch. 255, § 2.

to a degree of deference such that it should be affirmed if its decision is reasonable and rational. *Morton Int'l, Inc. v. Utah State Tax Comm'n,* 814 P.2d 581, 589 (Utah 1991). We perceive the requisite grant of discretion as having been made by the Legislature to the Board, as evidenced by the statutory language permitting a denial of benefits where a termination is for "just cause ... *if so found by the commission."* Utah Code Ann. § 35–4–5(b)(1) (Supp.1991) (emphasis added). *See Department of the Air Force v. Swider,* 824 P.2d 448, 451–52 (Utah App.1991). Accordingly, we will reverse the Board's decision only if we determine that it is unreasonable or irrational.

### I. ADMISSIBLE EVIDENCE SUPPORTS A FINDING OF ONLY ONE INSTANCE OF DRUG USE

█ At Wagstaff's evidentiary hearing before the Department's administrative law judge, the Air Force introduced the OSI report, which included statements by several of Wagstaff's former co-workers implicating him in other illegal drug use. The Board acknowledged in its opinion, with our emphasis, that "[b]ecause the Air Force did not call as witnesses the former fellow workers of the claimant who had identified him as using drugs on and off base, much of the OSI report *is hearsay evidence* as it relates to Mr. Wagstaff's claim for unemployment benefits." However, because hearsay evidence is admissible in administrative proceedings, *Yacht Club v. Utah Liquor Control Comm'n,* 681 P.2d 1224, 1226 (Utah 1984), admission of the OSI report during Wagstaff's hearing was not improper. Although there was nothing wrong with *admission* of this hearsay evidence, "findings of fact cannot be based *exclusively* on hearsay evidence.

They must be supported by a residuum of legal evidence competent in a court of law." *Id. See Department of Air Force v. Department of Employment Sec.,* 786 P.2d 1366, 1369 (Utah App.), *cert. denied,* 795 P.2d 1138 (Utah 1990).[2]

█ In this case, part of the OSI report admitted at the hearing dealt with Wagstaff's lunchtime drug incident with his co-workers at the park. The report contained Wagstaff's own admission, which is not hearsay, *see* Utah R.Evid. 801(d)(2), as well as his co-workers' statements concerning the incident. Given Wagstaff's admissions, in the report and at the administrative hearing, there was ample non-hearsay evidence to support the finding that Wagstaff had used cocaine during his lunch break on one occasion in June or July of 1989.

However, at the same time that he admitted the single instance of cocaine use, Wagstaff denied any other illegal drug use while he was employed at HAFB. Aside from the OSI report, no other evidence was presented at the hearing to refute Wagstaff's exculpatory testimony or implicate him in illegal drug use except on that one occasion. Thus, the only evidentiary support for any other illegal drug use by Wagstaff was the hearsay statements of his co-workers contained in the OSI report. Consequently, a finding, or even an inference, that Wagstaff was involved in more than one instance of illegal drug use would be unsupported by a residuum of competent legal evidence. Accordingly, any consideration of the OSI report by the Board was improper, and we approach our review from the perspective that the "just cause" nature of Wagstaff's termination must be evaluated solely with reference to the single admitted instance of drug use.[3]

---

**2.** Although the residuum rule imposes inconsistent standards on administrative agencies in admitting evidence and making findings, and therefore its use is in decline in many states, *see* K.C. Davis, *Administrative Law Treatise* 16.6 (1980), "this Court has reaffirmed Utah's position that the residuum rule applies to administrative proceedings." *Mayes v. Department of Employment Sec.,* 754 P.2d 989, 992 (Utah App. 1988); *Williams v. Schwendiman,* 740 P.2d 1354, 1356 (Utah App.1987).

**3.** No actual finding of other drug use was made by the Board. However, the Board's written opinion does state that "[t]he majority of the Board of Review is not entirely persuaded that the incident of drug usage which the claimant admits was the isolated incident he claims it to be." Even this subtle reference to unbolstered hearsay contravenes the policy of the residuum rule, which has as its purpose the avoidance of potentially unreliable evidence in administrative adjudication. *See Mayes,* 754 P.2d at 992 n.

## II. BOARD REASONABLY CONCLUDED THAT PETITIONER WAS TERMINATED FOR JUST CAUSE

Based on its "zero-tolerance" drug policy, and evidence supporting a determination that petitioner engaged in one incident of illegal drug use, the Air Force may well have been entirely justified, as a matter of basic employment law, in terminating Wagstaff. Not every justifiable discharge, however, provides a legitimate basis for denial of unemployment compensation benefits. *See Champlin Petroleum v. Department of Employment Sec.*, 744 P.2d 330, 333 (Utah App.1987); *Swider*, 824 P.2d at 451–52. Before depriving a terminated employee of the usual right to collect unemployment benefits, the Board must correctly determine that the employee was discharged for "just cause" under the state's unemployment compensation scheme. *Swider*, 824 P.2d at 451–52.

The Air Force bears the burden of proving just cause for Wagstaff's termination. Utah Admin.Code R475–5b–103 (1990); *Department of Air Force*, 786 P.2d at 1363. To establish just cause, the Air Force must show: "(1) knowledge on the part of the employee as to the conduct the employer expected, (2) conduct that was within the employee's power and capacity to control, and (3) culpability." *Swider*, 824 P.2d at 454. *See* Utah Admin.Code R475–5b–102 (1990); *Kehl v. Board of Review*, 700 P.2d 1129, 1133–34 (Utah 1985). In the instant case, it is undisputed that Wagstaff's drug use was within his power and capacity to control. Accordingly, we limit our analysis to the other two elements, i.e., whether Wagstaff possessed the knowledge and demonstrated the culpability necessary to sustain a "just cause" determination.

### A. Culpability

■ Culpability, as the term applies to an administrative determination of just cause, turns on "the seriousness of the conduct or the severity of the offense as it affects continuance of the employment relationship. The discharge must have been necessary to avoid actual or potential harm to the employer's rightful interests." Utah Admin.Code R475–5b–102(1)(a) (1990). The rule further states that culpability can not be found when the terminated employee's conduct "was an isolated incident of poor judgment and there is no expectation that the conduct will be continued or repeated." *Id.*

In a decision related to this case, the Board of Review affirmed the administrative law judge's determination that one of Wagstaff's co-workers, Robert J. Swider, had not been discharged for just cause. *See Swider*, 824 P.2d at 454. In finding Swider eligible for unemployment benefits, the Board emphasized two distinctions between Swider's and Wagstaff's conduct which it believed necessitated different results in the two cases. First, the Board found that, while Swider had voluntarily brought his drug use to the attention of authorities, Wagstaff had not admitted his drug use until subjected to OSI questioning. Second, while Swider had "volunteered for and was accepted into a drug rehabilitation program approved by the Air Force," *id.* at 452, Wagstaff had sought no counseling or rehabilitation. The Board concluded that, given these distinguishing facts, Swider was eligible for unemployment benefits while Wagstaff was not. On review, this court noted the reasonableness of the distinctions made by the Board. *Id.* at 453–54.

Neither of these distinctions, however, appear relevant to a determination of the "control" or "knowledge" elements of "just cause." Accordingly, we view them as bearing only on differing levels of culpability. Given Swider's voluntary admission of drug use to Air Force authorities and his enrollment in a drug rehabilitation program, the Board could reasonably have believed there was little or "no expectation that the conduct [would] be continued or repeated," and that Swider was therefore not culpable under the applicable regulasion.

---

1. Nonetheless, the Board's comment seems to have been in passing and not a basis for its deci-

tions.[4] Utah Admin.Code R475–5b–102(1)(a) (1990).

In this case, we do not believe the Board was unreasonable or irrational in basing its determination of culpability on the fact that, unlike Swider, Wagstaff took no steps which would give the Air Force any articulable comfort concerning the possibility of future drug use.[5] We are mindful that, as with Swider, the evidence which may be considered here only supports a determination that Wagstaff engaged in drug use once, while rule 475–5b–102(1)(a) states that conduct is not culpable if it constitutes an isolated incident of poor judgment not likely to be repeated. However, in Swider's case, the Board could have reasonably concluded that Swider's voluntary admission of drug use, combined with his enrollment in a rehabilitation program, constituted adequate evidence that Swider's drug use was not likely to be repeated. Such evidence is wholly absent from the record in the instant case. Moreover, while Wagstaff's drug use was an isolated incident, it demonstrated more than simply "poor judgment." His drug use, unlike Swider's, posed potential safety risks given Wagstaff's immediate return to work.[6] Accordingly, we affirm the reasonableness and rationality of the Board's conclusion that Wagstaff's conduct was culpable.

### B. Knowledge

■ Wagstaff correctly claims that, at the time of his drug use in June or July of 1989, Air Force drug policy was undergoing a significant shift toward enforcement of stricter disciplinary penalties. In January, HAFB's commander issued a drug abuse policy notice addressed to "all employees." The notice stated that because of the sensitive nature of the Air Force's mission and its vital role in national defense, "illegal drugs are strictly forbidden on Hill AFB." The notice further stated that "[a]ll available measures [of criminal and administrative procedure], including removal ... will be invoked against personnel who use, possess or sell any illegal drugs or substances." Other notices soon followed, all emphasizing the importance of maintaining a drug-free workforce and warning HAFB employees that drug use could expose them to harsh disciplinary measures.

Nonetheless, during this same time frame and at the time of Wagstaff's cocaine use, Air Force personnel regulations then in effect recommended disciplinary action ranging from reprimand to 5–day suspension for first-time drug use offenses, and a general progression of enforcement to allow opportunities for rehabilitation. *See* AFR 40–750, item 11(b).[7] Further, those same regulations stated that any disciplinary action was to be applied promptly and equitably, and that "penalties must not be disproportionate to offenses and are [to be] applied as consistently as possible con-

---

**4.** Indeed, this court affirmed Swider's grant of unemployment benefits on the sole ground that, based upon the facts of his case, the Board reasonably found Swider not to be culpable. *See Swider,* 824 P.2d at 454.

**5.** We note that Air Force regulations expressly distinguish between employees who evidence a desire to stop using drugs and those who do not. FPM 792–16(d) states in part that "[e]xcept for employees who voluntarily identify themselves as users of illegal drugs, obtain appropriate counseling and rehabilitation, and thereafter refrain from drug use, agencies are required to initiate disciplinary action against employees who are found to use illegal drugs."

**6.** While Swider's single instance of drug use occurred on a rafting trip during a long weekend, Wagstaff used cocaine during a lunch break on his regular shift and then, within mere minutes, proceeded back to HAFB to complete his shift.

**7.** The disparity between the disciplinary measures mentioned in the Commander's January 1989 letter and those called for in other pronouncements is further evidenced by a May 1989 letter informing HAFB employees of a Civilian Drug Testing Plan that was to be implemented sometime during the late summer or autumn of 1989. The letter stated that, once the plan became effective, termination would be proposed "for any employee receiving a second positive [drug] test, refusing to obtain counseling or rehabilitation after having been found to use illegal drugs, or adulterating or substituting a [urine specimen]." Although the notice was issued several months after the Commander's letter, it made no mention of termination as a potential penalty for first-time drug use.

sidering the particular circumstances of the cause(s) for disciplinary action." AFR 40–750 section A(1)(a). Prior to Wagstaff's termination, eighty HAFB employees had been disciplined for first-time drug use under AFR 40–750's disciplinary scheme. Of those eighty, not one was terminated.[8]

Wagstaff claims that, at the time of his drug use, he lacked the knowledge necessary for a just cause termination. He relies on these factors: (1) the Air Force's anti-drug policy was neither consistent nor predictable, (2) the disciplinary guide in effect did not recommend termination of first-time drug offenders, and (3) termination had not been applied to first-time offenders in the past.

The rule defining knowledge states: "The employee must have had a knowledge of the conduct which the employer expected. It is not necessary that the claimant intended to cause harm to the employer, but he should reasonably have been able to anticipate the effect his conduct would have." Utah Admin.Code R475–5b–102(b) (1990). Despite the ambiguity of the Air Force's anti-drug policy at the time of Wagstaff's offense, the suggested penalties for his offense, and the relative harshness of Wagstaff's penalty when compared to those afforded other first-time offenders, we nonetheless conclude that Wagstaff's conduct satisfied the "knowledge" requirement of R475–5b–102(b). Our decision is based on three factors.

First, although suggesting that first-time drug offenders receive discipline ranging from a reprimand to a five-day suspension, AFR 40–750 also states that "mechanical use of the [disciplinary] guide must be avoided." Other Air Force regulations repeat that sentiment. For instance, FPM 792–16(d) states that "[u]pon the first confirmed determination that an employee uses illegal drugs, there are a range of disciplinary actions available to an agency, from a written reprimand to removal." Second, in stark contrast to his claim that the Air Force's drug pronouncements were a maze of irreconcilable mixed signals, at his administrative hearing Wagstaff testified that, at the time of his drug use, he was aware of the Air Force's aggressive drug policy and knew that first-time drug use could lead to his discharge.[9] Finally, in his Statement of Discharge filed with the Utah Department of Employment Security, Wagstaff was asked (1) whether he was aware of the Air Force's anti-drug policy and (2) whether other employees had been fired for the same reason he was. Wagstaff answered both questions in the affirmative.

When deciding whether to engage in certain prohibited conduct, employees must be afforded the opportunity to make an informed evaluation of the potential penalties they face. Further, a terminated employee should not be denied unemployment benefits simply because he or she has been subjected to unfair or excessive punishment. We believe the "knowledge" element of "just cause" exists to protect against such inequities by ensuring that, at the time an employee commits a prohibited act, he or she can anticipate the potential penalties for that act.

Here, the record shows that at the time of his drug use, Wagstaff knew, by his own testimony, that he was violating the

---

**8.** In fact, a full half of all employees disciplined for first-time drug use had received only a reprimand and nineteen had received one-day suspensions. The most severe punishment meted out to a first-time offender was a fourteen-day suspension, applied to one employee who had committed numerous simultaneous violations of AFR 40–750. However, the record does not provide any details of the other cases nor does it disclose whether these employees held the same kind of sensitive and responsible position that Wagstaff held or whether they were in qualitatively different kinds of positions, such as kitchen workers, janitors, supply clerks, etc. *See generally Johnson v. Department of Employment*

*Sec.*, 782 P.2d 965, 972 (Utah App.1989) (Orme, J., concurring) (recognizing greater need for a drug-free workforce when employees are engaged in important and sensitive tasks).

**9.** Wagstaff's testimony in this regard was as follows:

Q: You knew what the Air Force policy was with reference to use of cocaine, did you not? WAGSTAFF: Yes.
Q: You knew that this could possibly lead, lead to the loss of your job, didn't you? WAGSTAFF: Yes.

Air Force's anti-drug policy and that he could be fired for his actions.[10] Clearly, Wagstaff possessed the information necessary to make an informed decision concerning the relative benefits and disadvantages of engaging in cocaine use. Further, Wagstaff does not argue that termination is an inherently unfair or excessive penalty for first-time drug use, and we do not believe it necessarily is for someone in Wagstaff's position. Therefore, we hold that the Board's decision is consistent with the policies underlying the "knowledge" element of "just cause" and affirm the reasonableness of its determination in this regard.[11]

## CONCLUSION

It was reasonable for the Board to conclude that Wagstaff possessed the culpability and knowledge necessary for a just cause termination. Accordingly, we affirm the Board's decision.

BILLINGS and GARFF, JJ., concur.

---

**10.** The Board could reasonably conclude that such testimony was more probative of the state of Wagstaff's actual knowledge than a journey through the maze of Air Force regulations and memoranda. In effect, Wagstaff subjectively knew that which an objective reading of the various official pronouncements leaves somewhat obscure—that an employee could indeed be terminated for any instance of illegal drug use.

**11.** If the record had shown that Wagstaff did not actually believe he could be terminated for his conduct, the Board's decision would have been contrary to policy absent a showing that Wagstaff "should reasonably have been able to anticipate the effect his conduct would have." Utah Admin.Code R475–5b–102(b) (1990). However, since Wagstaff admitted an actual awareness of the potential consequence of his drug use, we find it unnecessary to treat the issue of constructive knowledge.