A R A SERVICES, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (The Treasurer of the State of Illinois, as *ex officio* Custodian of the Injury Fund, *et al.*, Appellees).

First District (Industrial Commission Division) No. 1—90—3668WC

Opinion filed February 21, 1992.

Dowd & Dowd, Ltd., of Chicago (Joseph V. Dowd and Michael G. Patrizio, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Claudia E. Sainsot, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

Respondent, A R A Services, Inc. (ARA), appeals from an order of the circuit court of Cook County confirming the decision of the Illinois Industrial Commission (Commission) which found the claimant, John Maggiore (Maggiore), permanently and totally disabled under section 8(f) of the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(f) (Act)).

The facts here are largely undisputed. Maggiore had been employed by ARA since 1959. He completed one year of high school. In 1959, he suffered the loss of his left eye and had an artificial one in its place. In 1963, he suffered a low back injury. In 1966, he had surgery on his neck, and in 1969, he underwent a fusion of his lower spine.

In 1983, Maggiore was 51 years of age and working for ARA as a field mechanic traveling to various locations to repair vending machines. On December 22, 1983, he made a service call to Bedford Park. A vending machine, which was approximately 6 feet tall and weighed 700 to 900 pounds, had been damaged and knocked out of place. Maggiore went behind the machine and tried to push it forward. As he did so, he felt a little click in his neck. He developed stiffness and a little pain in his neck. He finished work that day. The next day, he could not turn his head. He reported the incident to his boss, who instructed him not to lift anything heavy. He continued to work, sporadically, until the end of January 1984.

In January 1984, Maggiore was under the care of Drs. Cascino and Harrison. Maggiore was diagnosed as suffering from cervical strain and initially treated with hot packs and naprapathic (manipulation of connecting tissues) treatment. Later in January, a CAT scan was performed which showed spondylosis. On January 23, 1984, Maggiore underwent a myelogram which showed a block of the cervical canal on the spinal cord at C6-7 and confirmed the existence of spondylosis.

In February 1984, Maggiore underwent two surgeries. The first on February 17, 1984, was a posterior cervical laminectomy from inferior C2 to superior C5. Two days after the surgery, Maggiore had no feeling below the nipple area. The cause of the loss of feeling was diagnosed as either spinal cord swelling (Dr. Cascino) or Brown-Sequard syndrome (Dr. I. Joshua Speigel). On February 19, 1984, Maggiore underwent a second surgery in which the laminectomy was extended from inferior C2 to C7. Maggiore regained feeling on his left side but not on the right side. According to Dr. Cascino, Maggiore had no incontinence or involuntary movement and had a good hand-fist formation on both sides and good strength in regard to grip control.

In March 1984, Maggiore began a program at the Rehabilitation Institute of Chicago. In 1985, he was evaluated by Drs. Addison and Yarkony. Dr. Addison noted that Maggiore was now able to walk on the toes of his right foot. Dr. Addison stated that "[i]t appears that with the right kind of total motivation instilled that there should be some work ability for [Maggiore]." Dr. Yarkony noted that Maggiore wanted to return to some type of employment. In April 1985, Maggiore underwent a driver education evaluation. According to the report, Maggiore had no problem driving and was a good defensive driver. He needed no specially adapted equipment to drive safely.

In his medical report of September 25, 1986, Dr. Cascino noted that Maggiore was experiencing numbness in both upper extremities

and a tightening sensation of the soles of both feet. There was a diminution in the right extremities as compared to the left side. According to Dr. Cascino, Maggiore could not work, since he did not have the education for office work, and Dr. Cascino would not give him permission to drive.

On March 19, 1987, Maggiore was examined by Dr. I. Joshua Speigel. Dr. Speigel found that Maggiore's current symptoms of diminished sensation and difficulty with his right foot resulted from the Brown-Sequard syndrome and were permanent and irreversible. In a letter dated December 29, 1987, Dr. Speigel stated:

> "The Brown-Sequard Syndrome has rendered the right lower extremity non-functional to such a degree that, in industrial terms, it can be stated unequivocally that he has sustained A COMPLETE LOSS OF USE OF THE LOWER EXTREMITY AS A RESULT OF HIS INJURY OF DECEMBER 26 [sic]. This loss of the use of the right lower extremity is permanent and irreversible."

At the hearing before the arbitrator on September 13, 1988, Maggiore testified that he spends approximately 2½ to three hours on his feet per day. The rest of the time he spends either on a recliner or the couch. He has constant pain in his upper body and his right side feels like wood. When he walks, he is clumsy. He gets tired and does not know where his right foot is. The numbness on his left side has cleared up, and he has no trouble with his left foot. According to Maggiore, his right foot does not want to turn up sideways. Sometimes he has to keep looking down to see where his right foot is. He has trouble walking up or down stairs because his body feels like it is going to topple over. He has to look down while going downstairs so he can see where his right foot is to prevent him from falling. In the winter, it is worse because of the snow and ice. Sometimes his right foot gets so cold he has to wrap it in a heating pad for up to three hours. Dr. Meracho, an orthopedic specialist, recommended a brace for his right leg but Maggiore did not have this done.

On cross-examination, Maggiore testified that he was using a cane for his right leg but discarded it after doing physical therapy.

On further cross-examination, Maggiore testified that he still had a driver's license even though he does not drive. He does not go out in the winter because he is afraid his leg will get stiff on the ice and snow. His right foot is colder than the left. He gets up at night to walk around in the house.

The arbitrator noted the conflicting medical findings and chose to rely on Dr. Speigel's conclusion that Maggiore had permanently lost

complete use of his right leg. The arbitrator therefore ruled that Maggiore was permanently and totally disabled for life under section 8(e) of the Act.

The State Treasurer sought review of the arbitrator's decision by the Commission. On review by the Commission, no new evidence was presented to the Commission. However, based upon Dr. Cascino's report that Maggiore found some sensation in the right leg above the knee and that Maggiore was able to ambulate on the right leg, the Commission found that Maggiore had not lost 100% of the use of his right leg and, therefore, was not permanently and totally disabled under section 8(e) of the Act. Nevertheless, the Commission found Maggiore to be permanently and totally disabled under section 8(f) of the Act.

ARA appealed the decision of the Commission to the circuit court. The circuit court remanded the case to the Commission to make an additional finding of fact as to whether Maggiore lost 100% of the use of his right foot and a conclusion of law as to whether 100% loss of the use of an eye coupled with 100% loss of the use of a foot was a sufficient basis for an award of permanent and total disability pursuant to section 8(e) of the Act.

On remand, the Commission accorded the greatest weight to the opinion of Dr. Cascino, a treating physician, and because Drs. Cascino and Addison's findings and opinions correlated with Maggiore's complaints. The Commission gave no weight to Dr. Speigel's opinion because his opinion as to the extent of Maggiore's permanent disability of the right leg constituted a conclusion of ultimate fact which is the province of the Commission. The Commission then found as follows:

> "The Commission notes that although [Maggiore] expressed some apprehension about walking, standing, or climbing stairs, [Maggiore] is able to walk on his right leg and foot without assistance. [Maggiore] failed to establish that the injured members no longer perform their normal function. The Commission therefore finds that 8(e) of the Act is not applicable to this case because [Maggiore] has not proven permanent and complete loss of use of the right leg or the right foot."

The Commission then reaffirmed its original decision that Maggiore be awarded benefits pursuant to section 8(f) of the Act given that Maggiore's age, skill level and lack of education prevented him from performing anything but the most menial task for which no stable labor market existed.

In its lengthy memorandum decision and judgment, the circuit court reviewed the original decision of the arbitrator and the Commis-

sion, as well as the Commission's decision on remand. The circuit court found that there was sufficient evidence in the record to support the Commission's award of benefits under section 8(f) of the Act and confirmed the Commission's decision. This appeal by ARA followed.

ARA contends that the decision of the Commission was against the manifest weight of the evidence. ARA argues that the evidence supports a finding that Maggiore was permanently disabled under section 8(e) of the Act rather than section 8(f) of the Act.

Section 8(e) of the Act provides in pertinent part as follows:

"§8. The amount of compensation which shall be paid to the employee for an accidental injury not resulting in death is:

\* \* \*

(e) For accidental injuries in the following schedule, the employee shall receive compensation \* \* \*. The following listed amounts apply \* \* \*.

\* \* \*

18. The specific case of loss of both hands, both arms, or both feet, or both legs, or both eyes, or of any two thereof, or the permanent and complete loss of the use thereof, constitutes total and permanent disability, to be compensated according to the compensation fixed by paragraph (f) of this Section. These specific cases of total and permanent disability do not exclude other cases.

Any employee who has previously suffered the loss or permanent and complete loss of the use of any such members, and in a subsequent independent accident loses another or suffers the permanent and complete loss of the use of any one of such members the employer for whom the injured employee is working at the time of the last independent accident is liable to pay compensation only for the loss or permanent and complete loss of the use of the member occasioned by the last independent accident." (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(e)(18).)

Section 8(f) provides in pertinent part as follows:

"(f) In case of complete disability, which renders the employee wholly and permanently incapable of work, or in the specific case of total and permanent disability as provided in subparagraph 18 of paragraph (e) of this Section, compensation shall be payable at the rate provided in subparagraph 2 of paragraph (b) of this Section for life.

\* \* \*

If any employee who receives an award under this paragraph afterwards returns to work or is able to do so, and earns or is able to earn as much as before the accident, payments under such award shall cease. \*\*\*
 \*\*\*

Disability as enumerated in subdivision 18, paragraph (e) of this Section is considered complete disability.

If an employee who had previously incurred [the] loss or the permanent and complete loss of use of one member, through the loss or the permanent and complete loss of the use of one hand, one arm, one foot, one leg, or one eye, incurs permanent and complete disability through the loss or the permanent and complete loss of the use of another member, he shall receive, in addition to the compensation payable by the employer and after such payments have ceased, an amount from the Second Injury Fund provided for in paragraph (f) of Section 7 [(Ill. Rev. Stat. 1989, ch. 48, par. 138.7(f))], which, together with the compensation payable from the employer in whose employ he was when the last accidental injury was incurred, will equal the amount payable for permanent and complete disability as provided in this paragraph of this Section.

The custodian of the Second Injury Fund provided in paragraph (f) of Section 7 shall be joined with the employer as a party respondent in the application for adjustment of claim." (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(f).)

The State Treasurer is the *ex officio* custodian of the second injury fund. Ill. Rev. Stat. 1989, ch. 48, par. 138.7(f).

■ It is necessary at this point to review the distinction between awards made pursuant to section 8(e)(18) and those made pursuant to section 8(f) of the Act. In discussing that distinction, our supreme court in *Freeman United Coal Mining Co. v. Industrial Comm'n* (1984), 99 Ill. 2d 487, stated as follows:

"There is a distinction between the two kinds of permanent and total disability referred to in section 8(f), as the wording of that section suggests. '[C]omplete disability, which renders the employee wholly and permanently incapable of work' is defined only in section 8(f), and only in those words; it can form the basis for an award only if the employee is able to show that his injuries have left him without a market for his skills, so that he is for practical purposes unemployable [citations], and benefits for that type of disability must cease or be reduced should the employee subsequently reacquire a wage-earning capacity [cita-

tion]. Disability under section 8(e)(18), by contrast, is 'permanent and total' only by legislative pronouncement; it is not inconsistent with a continuing ability to work, and in that event the pension mandated for it is not to be affected by the employee's return to work. [Citations.] Although the benefit rates for disability under section 8(e)(18) are calculated in the same manner as those for disability under section 8(f), the purpose behind section 8(e)(18) is not merely to replace lost wages or to provide financial protection for workers whose earning power is terminated, but 'is broad enough to accommodate the pain and inconvenience that accompany the "specific case of loss of both hands, both arms, both feet or both eyes ***" even though the employee remains able to work.' " (*Freeman*, 99 Ill. 2d at 492-93, quoting *National Lock Co. v. Industrial Comm'n* (1975), 62 Ill. 2d 51, 56-57.)

ARA correctly points out that under an award pursuant to section 8(e)(18), its liability for compensation is limited to the loss of the member involved in the second accident, rather than the permanent and total loss of the man as a whole. 99 Ill. 2d at 493.

ARA's argument that an award pursuant to section 8(e)(18) rather than 8(f) was appropriate is twofold: first, that the evidence showed Maggiore had suffered a complete and permanent loss of the use of his right leg and foot; and, second, that the evidence established that Maggiore was not incapable of working. We disagree.

It is well settled that a reviewing court will not set aside the decision of an administrative agency unless the findings are against the manifest weight of the evidence. (*Sperling v. Industrial Comm'n* (1989), 129 Ill. 2d 416, 421.) It is solely within the province of the Commission to draw reasonable inferences from the record and determine the weight to be given the evidence presented. (*Caterpillar Tractor Co. v. Industrial Comm'n* (1984), 124 Ill. App. 3d 650, 653.) That other inferences might be drawn from the evidence is not relevant since a reviewing court will not disregard or reject permissible inferences drawn by the Commission nor will it substitute its judgment for that of the Commission unless its findings are against the manifest weight of the evidence. (*Caterpillar*, 124 Ill. App. 3d at 653.) It is the Commission's function to choose between conflicting medical opinions. (124 Ill. App. 3d at 653.) Not only may the Commission decide which medical view is to be accepted, it may attach greater weight to the opinion of the treating physician. *International Vermiculite Co. v. Industrial Comm'n* (1979), 77 Ill. 2d 1, 4.

There is no requirement that a claimant must establish he is unable to work as a result of the loss of use of a member, but only that

the member no longer performs its normal function. (*Treasurer of the State of Illinois v. Industrial Comm'n* (1985), 136 Ill. App. 3d 809, 814.) ARA relies on Maggiore's testimony that he must look at his foot to see where it is, that he has no sensation in it, that he must walk with the use of a cane, he cannot drive a car, and his foot feels cold and like a piece of wood. ARA also relies on Dr. Speigel's report and argues that Dr. Cascino substantiated Dr. Speigel's finding when he wrote that Maggiore had diminished sensation below the right knee, a tightening on the soles of his feet and an inward turning of his feet.

■ Maggiore testified that he was apprehensive about walking, particularly when there was ice and snow. However, he also testified that he no longer used a cane; that he was on his feet 2½ to 3 hours per day and that he walks around in the house and even walked to the arbitration hearing. Dr. Cascino noted some use of Maggiore's right leg. Dr. Addison noted that Maggiore had begun walking on the toes of his right foot. It is noted that the Commission struck the opinion of Dr. Speigel that claimant had sustained a 100% loss of use of his right leg as a conclusion of ultimate fact and that said ultimate conclusion was within the province of the Commission. In the same paragraph, the Commission stated that it accorded greatest weight to the opinions of Dr. Cascino and Dr. Addison, since they were correlated to the complaints of the complainant. Accordingly, we are convinced that the inference that claimant had not lost 100% of the use of his right leg or foot was a permissible inference based upon the evidence in the record, and this cause should not be remanded to the Commission, as the findings on this issue have clearly been determined by the Commission.

The cases relied on by ARA, *Scandroli Construction Co. v. Industrial Comm'n* (1973), 54 Ill. 2d 395, and *Keystone Steel & Wire Co. v. Industrial Comm'n* (1969), 42 Ill. 2d 273, are not persuasive. Neither case addressed the issue of whether an award was appropriate pursuant to section 8(e)(18), rather than section 8(f). Both also affirmed decisions of the Commission, as we do in this case. In both cases, the claimants had to use either leg braces or a cane to walk. Thus, we find ARA's authorities distinguishable.

We also reject ARA's argument that the evidence did not establish that Maggiore is permanently and totally disabled under section 8(f).

In *Illinois-Iowa Blacktop, Inc. v. Industrial Comm'n* (1989), 180 Ill. App. 3d 885, this court stated as follows:

"A person is totally disabled when he cannot perform any services except those for which no reasonably stable labor mar-

ket exists. [Citation.] In determining whether an employee can perform any useful services, his age, training, education and experience must be taken into account. Unless he is obviously unemployable or unless he presents medical evidence to support a claim of total disability, a claimant has the burden of proving that no employment is available for a person in [these] circumstances. [Citation.] However, once the claimant establishes that he falls into the 'odd-lot' category of persons who are not altogether incapacitated but are so handicapped that they will not be employed regularly in any well-known branch of the labor market, the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to the claimant." *Illinois-Iowa,* 180 Ill. App. 3d at 888-89.

The evidence established that Maggiore was 56 years of age at the time of the arbitration hearing. He had one year of high school education. He could not spell or read well. The only type of work he had performed since 1959 was that of a mechanic. His work as a mechanic for ARA required him to push heavy machines weighing 800 to 1,200 pounds unassisted and to carry a tool box weighing 20 to 25 pounds. He also drove from site to site. Given his physical limitations, his problems walking, suffering continual pain and only being able to be on his feet two to three hours per day, his ability to perform any job that required physical labor was severely curtailed.

ARA argues that Maggiore was capable of telephone solicitation work as suggested by Dr. Pawl in his report and that the Department of Vocational Rehabilitation of the Rehabilitation Institute of Chicago concluded that Maggiore was ready to return to behind-the-wheel driving. However, Dr. Cascino concluded that Maggiore should not drive or do office work due to his lack of education and the original loss of his left eye, which Dr. Cascino felt would make the situation worse.

We are of the opinion that Maggiore established that he was in the "odd-lot" category, and, therefore, the burden was on ARA to prove the availability of regular and suitable work for Maggiore. Given Maggiore's lack of education, age and employment history, the suggestion that Maggiore be employed as a telephone solicitor does not meet ARA's burden of establishing that regular and suitable employment was available for Maggiore.

Finally, ARA argues that the Commission's decision contravenes the legislative intent of the second injury fund.

■ Section 7(f) of the Act requires an employer to pay twice a year a sum equal to one-eighth of 1% of all compensation payments

paid by that employer into a fund known as the second injury fund. (Ill. Rev. Stat. 1989, ch. 48, par. 138.7(f).) The purpose behind the second injury fund is to enhance the employability of handicapped persons who previously lost a member or its use by limiting the liability of employers hiring or retaining such persons in their employment and at the same time to afford such handicapped persons the proper measure of compensation if a second loss was sustained, with industry bearing the burden of such losses. *Arview v. Industrial Comm'n* (1953), 415 Ill. 522, 530.

■■ ARA correctly notes that under section 8(e)(18), it would only be responsible for the loss of the use of Maggiore's right leg and foot with the complete and total disability liability being borne by the second injury fund. (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(f).) However, as we have previously determined, Maggiore was not eligible for an award pursuant to section 8(e)(18) because he did not prove that he had lost 100% of the use of his right leg or foot. We fail to see how the intent of the statute is frustrated, as ARA maintains, when, on the basis that the requirements of the statute were not met, an award is denied.

Therefore, we conclude that the decision of the Commission awarding benefits to Maggiore pursuant to section 8(f) of the Act and denying benefits under section 8(e)(18) of the Act is not against the manifest weight of the evidence. We further conclude that the award in this case pursuant to section 8(f) of the Act does not frustrate the intent behind the second injury fund.

The judgment of the circuit court is affirmed.

Affirmed.

McCULLOUGH, P.J., and LEWIS, STOUDER, and RAKOWSKI, JJ., concur.