Warren HOSKINGS, Petitioner,

v.

**INDUSTRIAL COMMISSION OF UTAH and Salt Lake City Corporation, Respondents.**

No. 950236–CA.

Court of Appeals of Utah.

May 31, 1996.

---

James R. Black, Salt Lake City, for Petitioner.

Alan L. Hennebold, Frank Nakamura, and Erie V. Boorman, Salt Lake City, for Respondents.

Before ORME, DAVIS and BILLINGS, JJ.

## OPINION

ORME, Presiding Judge:

Petitioner Warren Hoskings seeks review of an Industrial Commission order that overturned an administrative law judge's decision granting him permanent total disability benefits. We reverse the Commission's order and remand with instructions to reinstate the administrative law judge's decision.

## FACTS

■ We recite the facts as found by the Commission.[1] In 1966, Hoskings began work as a fireman for Salt Lake City Corporation. He was promoted to lieutenant in 1974, and then to captain in the early 1980's.

In 1980, Hoskings injured his left ankle while fighting a fire. As a result of this injury, he underwent surgery but continued to experience pain. In April 1986, Hoskings reinjured his left ankle in the course of his employment. The next day, he sought medical attention and was diagnosed with an acute left ankle sprain and calcaneous/cuboid joint problem. He was later diagnosed with the additional condition of traumatic osteoarthritis.

Hoskings did not miss any time from work as a result of this injury. However, after the injury, he experienced chronic pain and difficulty in walking. Various physicians examined him and attempted to treat his injuries with conservative remedies. However, none of these treatments produced any significant improvement in Hoskings's left ankle.

In 1988, Hoskings took early retirement from Salt Lake City Corporation, apparently to take advantage of an attractive early retirement package. At the time of his retirement, Hoskings did not inform Salt Lake City Corporation that his decision to retire was related in any manner to his left ankle injury. However, he testified before an administrative law judge in this proceeding that his injury did contribute to his decision to retire early. There is no evidence that his work performance was unsatisfactory prior to his retirement.

During the summers of 1990 and 1991, after his retirement, Hoskings worked for Hamilton Stores as a fire marshall in Yellowstone National Park. A significant portion of his work day consisted of driving in a vehicle from one store to another, making inspections and teaching fire safety procedures. Hoskings reported no difficulties in performing the duties of this job. However, when the job was changed to a year-round position, he chose to resign because he believed the cold winter temperatures might aggravate his ankle pain.

## INDUSTRIAL COMMISSION PROCEEDINGS

In 1990, Hoskings filed an Application for Hearing with the Industrial Commission. In his Application for Hearing, he claimed that Salt Lake City Corporation had refused to

---

1. Although an administrative law judge initially hears the evidence, the Commission is the ultimate fact finder. *Virgin v. Board of Review,* 803 P.2d 1284, 1287 (Utah App.1990).

pay him medical expenses, temporary total disability benefits, permanent partial disability benefits, and permanent total disability benefits due him by reason of his ankle injury. An evidentiary hearing before an administrative law judge was held on January 8, 1992. After the hearing, the ALJ referred the matter to a medical panel. The medical panel found that Hoskings's foremost orthopedic problem was the calcaneus/cuboid arthritis of his left ankle. The medical panel opined that the origin of this problem was definitely industrial and that it had worsened since the 1986 industrial accident.

The ALJ then made a tentative finding of permanent total disability and, as required by statute, referred the case to the Division of Rehabilitation Services (DRS) for an evaluation of Hoskings's susceptibility to rehabilitation.[2] According to the testimony of Frank Miera, the rehabilitation counselor assigned to evaluate Hoskings's case, DRS performed a one-week work evaluation during November 1992. Mr. Miera testified that Hoskings fully cooperated with the DRS during the evaluation and was very truthful and honest about his condition throughout the process. The evaluation was conducted by DRS rehabilitation counselors trained to administer such evaluations. Mr. Miera testified that in the regular course of his work as a DRS rehabilitation counselor, he refers applicants to trained DRS personnel and relies on their written reports in assessing an applicant's potential for rehabilitation. After the evaluation, Mr. Miera requested Hoskings to update him periodically on his condition. Mr. Miera testified that Hoskings did update him on his condition and reported that he was having the same problems with his left ankle. Mr. Miera concluded that it was not feasible for Hoskings to enter into a rehabilitation program.

Salt Lake City Corporation then requested that Hoskings undergo a vocational evaluation to be performed by Intracorp, a private rehabilitation firm, which evaluation was completed during December 1993. Salt Lake City Corporation submitted the Intracorp report to the ALJ.

The Intracorp report concluded that Hoskings could be rehabilitated. The Intracorp evaluator, Jim Floyd, found that Hoskings demonstrated the capacity to learn and would be successful in formal training to prepare for more challenging and higher paying jobs. In his report, Mr. Floyd noted that Hoskings had improved physical stamina and that DRS's finding of poor physical stamina was no longer accurate. In addition, Mr. Floyd identified several jobs that Hoskings would qualify for given some limited training or schooling. Finally, the Intracorp report identified the regions of Utah that would provide the greatest opportunity for employment in the identified jobs.

After receiving the DRS letter, Miera's testimony, and the Intracorp report, the ALJ entered her Findings of Fact, Conclusions of Law and Order. Applying the "odd lot" doctrine, the ALJ first found that Hoskings had met his burden of proving that the 1986 industrial accident caused his ankle injury and that he could not return to work as a fire fighter. Next, the ALJ found that Hoskings met his burden of proving he could not be rehabilitated. The ALJ then concluded that Salt Lake City Corporation had not met its burden to show that regular steady work was nonetheless available to Hoskings. Accordingly, the ALJ held that Hoskings was entitled to an award of permanent total disability benefits.

Salt Lake City Corporation filed a Motion for Review with the Commission. The Com-

---

2. The applicable law regarding permanent total disability, in effect at the time of Hoskings's second injury, read, in pertinent part, as follows:
 If the employee has tentatively been found to be permanently and totally disabled, it shall be mandatory that the industrial commission of Utah refer the employee to the division of vocational rehabilitation [since renamed the Division of Rehabilitation Services] under the state board of education for rehabilitation training.... If the division of vocational reha-

bilitation ... certifies to the industrial commission of Utah in writing that the employee has fully cooperated with the division of vocational rehabilitation in its efforts to rehabilitate him, and in the opinion of the division the employee may not be rehabilitated, the commission shall order that there be paid to the employee weekly benefits....
Utah Code Ann. § 35–1–67 (1974)(repealed 1988 Utah Laws, ch.116, § 4).

mission reversed the ALJ's decision and held that Hoskings was not entitled to permanent total disability benefits. In reaching its decision, the Commission found that Hoskings could be rehabilitated and that regular, dependable employment was available to him in other branches of the labor market.

On appeal, Hoskings argues that the Commission misinterpreted the "odd lot" doctrine by failing to apply the correct burdens of proof to the evidence introduced by the parties. In addition, he argues that the Commission's findings are not supported by competent legal evidence. Before turning to the specific claims, we review the legal principles applicable to this case, i.e., the "odd lot" doctrine and the residuum rule.

## "ODD LOT" DOCTRINE

■ Under the "odd lot" doctrine,[3] the Commission may find permanent total disability when a relatively small percentage of impairment caused by an industrial accident is combined with other factors to render the claimant unable to obtain suitable employment. See Hardman v. Salt Lake City Fleet Mgmt., 725 P.2d 1323, 1326 (Utah 1986); Marshall v. Industrial Comm'n, 681 P.2d 208, 212 (Utah 1984). A finding of permanent total disability under the odd lot doctrine requires the following: (1) the employee must prove that he or she cannot perform the duties required in his or her occupation; (2) after being referred to the Division of Rehabilitation Services by the Industrial Commission, the employee, with the assistance of the DRS, must prove that he or she cannot be rehabilitated; (3) if the employee

meets the first two requirements, the burden then shifts to the employer to prove the existence of regular, steady work the employee can nonetheless perform, taking into account such factors as the employee's age, mental capacity, and education. Hardman, 725 P.2d at 1326–27.

■ In meeting its burden, it is insufficient for the employer to simply show that the employee is generally capable of performing some type of work. Rather, in order to prove the existence of regular and steady work the employee can perform, the employer must prove that "regular, dependable work [is] available " to the employee. Marshall, 681 P.2d at 212 (emphasis added). This requires the employer to introduce evidence of "an actual job within a reasonable distance from [the employee's] home which he is able to perform or for which he can be trained." Lyons v. Industrial Special Indem. Fund, 98 Idaho 403, 407, 565 P.2d 1360, 1364 (1977) (construing Idaho statute). See ARA Servs., Inc. v. Industrial Comm'n, 226 Ill.App.3d 225, 168 Ill.Dec. 756, 761–62, 590 N.E.2d 78, 83–84 (1992) (holding burden shifts to employer to show some kind of suitable work is available to claimant); Durbin v. State Farm Fire & Cas. Co., 558 So.2d 1257, 1260 (La.App.1990) (requiring employer to prove some form of gainful occupation is regularly and continuously available to employee within reasonable proximity of his residence). Moreover, the employer must also show that the employee "has a reasonable opportunity to be employed at that job." Lyons, 565 P.2d at 1364.[4]

3. The term "odd lot" was first used by Judge Moulton in the case of Cardiff Corp. v. Hall, 1 K.B. 1009 (1911):

[T]here are cases in which the onus of sh[o]wing that suitable work can in fact be obtained does fall upon the employer who claims that the incapacity of the workman is only partial. If the accident has left the workman so injured that he is incapable of becoming an ordinary workman of average capacity in any well known branch of the labour market—if in other words the capacities for work left to him fit him only for special uses and do not, so to speak, make his powers of labour a merchantable article in some of the well known lines of the labour market, I think it is incumbent upon the employer to sh[o]w that such special em-

ployment can in fact be obtained by him. If I might be allowed to use such an undignified phrase, I should say that if the accident leaves the workman's labour in the position of an "odd lot" in the labour market, the employer must sh[o]w that a customer can be found who will take it.
Id. at 1020–21 (quoted in 1C Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 57.51(b), at 10–330 (1995)).

4. After his retirement, Hoskings moved from Salt Lake City, Utah. He now has homes in Ivins and Vernal, Utah. As the Idaho Supreme Court stated, "[a] claimant should not be permitted to achieve permanent disability by changing his place of residence." Lyons, 565 P.2d at 1364 n. 3. Therefore, in this case, in considering whether

RESIDUUM RULE

█ Utah Code Ann. § 35–1–88 (1994) provides that "[n]either the Commission nor its hearing examiner shall be bound by the usual common-law or statutory rules of evidence." Therefore, hearsay evidence, even if objected to, is admissible in an administrative hearing before the Commission. *Industrial Power Contractors v. Industrial Comm'n,* 832 P.2d 477, 478 (Utah App.1992). However, the Commission's findings of fact "cannot be based *exclusively* on hearsay evidence." *Yacht Club v. Utah Liquor Control Comm'n,* 681 P.2d 1224, 1226 (Utah 1984) (emphasis in original). To support the Commission's findings, "there must be a residuum of evidence, legal and competent in a court of law." *Hackford v. Industrial Comm'n,* 11 Utah 2d 312, 315, 358 P.2d 899, 901 (1961).

█ The residuum rule requires that each finding of fact made by an administrative agency be supported by a residuum of legally competent evidence. *See Yacht Club,* 681 P.2d at 1227; *Industrial Power,* 832 P.2d at 479; *Wagstaff v. Department of Employment Sec.,* 826 P.2d 1069, 1072 (Utah App.1992); *Tolman v. Salt Lake County Attorney,* 818 P.2d 23, 32–33 (Utah App.1991). For example, in *Wagstaff,* a former Air Force civilian employee, discharged for drug use, challenged a decision of the Board of Review of the Industrial Commission denying him unemployment compensation benefits. The employee claimed that since the Air Force disciplinary regulations in effect at the time of his drug use did not sanction discharge for first-time drug offenders, he was not terminated for just cause. 826 P.2d at 1070–71.

In evaluating whether the employee was discharged for just cause, the Commission made a factual finding that he had used cocaine during his lunch break on one occasion. *Id.* at 1072. The Commission based its finding on an internal Air Force investigation report, as well as on the employee's own admission in testimony to the one-time drug use. *Id.* at 1071. The report contained the employee's admission to the one-time drug use, obtained in the course of investigation,

as well as his coworkers' statements concerning the incident. *Id.* However, the report also contained statements from co-workers regarding the employee's drug use on other occasions. *Id.* In finding that the employee had engaged in drug use on one occasion, the Commission also made reference to the fact that the majority of the Board was not entirely persuaded that he had used drugs only on the one occasion. *Id.* at 1072 n. 3.

This court held that the Commission's finding of a single incident of drug use was supported by the employee's own admissions, and thus was supported by a residuum of competent, non-hearsay evidence. *Id.* at 1072. *See* Utah R. Evid. 801(d)(2). However, although no actual finding of additional drug use was made by the Commission, this court was concerned that even the subtle reference to additional drug use contained in the Commission's written opinion, which could only be supported by the co-workers' hearsay statements not buttressed by a residuum of competent legal evidence, tainted its decision. *Id.* Therefore, in reviewing whether the employee's termination was for just cause, we evaluated the Board's decision solely with reference to the employee's single admitted instance of drug use. *Id.*

Similarly, in this case, we must determine whether the Commission's findings of fact regarding rehabilitation and job availability are supported by a residuum of competent, nonhearsay evidence. If the Commission's findings of fact are not supported by a residuum of such evidence, Hoskings is entitled to appropriate relief.

ANALYSIS

Under the odd lot doctrine, as explained above, the employee has the initial burden to prove he or she cannot perform the duties required in his or her occupation and that he or she cannot be rehabilitated. If the employee fails in meeting these burdens, the employer's burden to prove the existence of actual work the employee can perform is not

Salt Lake City Corporation met its burden, evidence of job availability in Salt Lake City, Ivins,

and Vernal, Utah, would all be germane. *See id.*

triggered and we need not evaluate whether that burden was actually met.

In its order, the Commission reversed the ALJ's decision and found that Hoskings could be rehabilitated. Therefore, we first review the Commission's finding regarding Hoskings's potential for rehabilitation.[5]

### A. Rehabilitation

 In finding that Hoskings could be rehabilitated, the Commission relied on the conclusion to that effect in the Intracorp report. However, this report clearly meets the definition of hearsay under Rule 801, Utah Rules of Evidence.[6] The author of the report, Jim Floyd, never testified at a hearing before the ALJ or the Commission. Therefore, although the Intracorp report was admissible in the Commission's proceedings, it could not form the sole basis for the Commission's factual finding regarding Hoskings's potential for rehabilitation. Consequently, the Commission's factual finding that Hoskings could be rehabilitated cannot be sustained unless there is some other, non-hearsay evidence to support it.

In its order, the Commission stated that "Intracorp's conclusion [regarding rehabilitation] is corroborated by the fact that Hoskings found other work at Hamilton Stores and successfully performed his employment duties there." Salt Lake City Corporation argues that this fact supports the Commission's decision and provides the requisite residuum of competent legal evidence. However, this fact is essentially irrelevant to the issue of whether Hoskings could be rehabilitated into a well-known branch of the labor market.

Hoskings testified at the evidentiary hearing that Hamilton Stores was seeking someone to work year round, including the winter months. Hoskings testified he was unable to work during the winter months because he could not stand the pain in his foot and ankle caused by the cold weather. Salt Lake City Corporation presented no contradicting evidence on this point. The mere fact that Hoskings was able to work for a few months during the summers of 1990 and 1991 as a fire marshall in Yellowstone National Park, hundreds of miles from Salt Lake City and his permanent residences in Ivins and Vernal, Utah, does not support a finding that he can be successfully rehabilitated into any well-known branch of the labor market.[7]

 Although we base our decision regarding rehabilitation on the residuum rule, which the parties have addressed in their briefs, there is an additional basis on which our decision could be premised. The applicable law regarding permanent total disability at the time of Hoskings's April 16, 1986, injury read, in pertinent part, as follows:

> If the employee has tentatively been found to be permanently and totally disabled, it shall be mandatory that the industrial commission of Utah refer the employee to the [Division of Rehabilitation Services] for rehabilitation training.... If the division ... certifies to the industrial commission of Utah in writing that the employee has fully cooperated with the division ... in its efforts to rehabilitate him, and in the opinion of the division the employee may not be rehabilitated, the commission *shall* order that there be paid to the employee weekly benefits....

Utah Code Ann. § 35–1–67 (1974)(repealed 1988 Utah Laws, ch.116, § 4) (emphasis add-

---

5. The first prong of the odd lot doctrine, whether the employee can perform the duties required in his or her occupation, is not at issue in this appeal.

6. Utah R. Evid. 801 provides in pertinent part: (a) Statement. A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.

 ....

 (c) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testify-

ing at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

7. One of the motives behind the "odd lot" doctrine is a desire to encourage efforts by a claimant to rehabilitate himself. *See* 1C Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 57.51(f), at 10–357 to –359 (1995). Therefore, courts are careful to avoid penalizing or discouraging a claimant from attempting to rehabilitate himself in some type of special work setting. *Id. See also* note 4.

ed). A plain reading of this statute suggests the determination of rehabilitation is vested in DRS, with no discretion left with the Commission to revisit the question and decide it anew. Therefore, it would appear that once DRS certified to the Commission in writing that Hoskings could not be rehabilitated, all inquiry into the issue of rehabilitation—a question delegated by the Legislature not to the Commission, but to DRS—should have ended. As we read the statute, the Commission was unable to revisit the issue of rehabilitation or to consider other evidence, such as the Intracorp report presented by Salt Lake City Corporation.[8]

## B. Job Availability

Once it is determined that an employee cannot be rehabilitated—and such is the conclusion that must be drawn about Hoskings on the record before us—the burden then shifts to the employer to prove, notwithstanding the employee's general inability to be rehabilitated, the "existence of regular, steady work the employee can perform, taking into account such factors as the employee's age, mental capacity and education." *Hardman v. Salt Lake City Fleet Mgmt.*, 725 P.2d 1323, 1326–27 (Utah 1986). However, as indicated above, the employer must introduce evidence of "an actual job within a reasonable distance from [the employee's] home which he is able to perform or for which he can be trained." *Lyons v. Industrial Special Indem. Fund*, 98 Idaho 403, 407, 565 P.2d 1360, 1364 (1977). In addition, the employer must also show that the employee "has a reasonable opportunity to be employed at that job." *Id.*

 In this case, the Commission relied exclusively on the Intracorp report to find

that regular, dependable work was available to Hoskings. However, and totally aside from residuum rule concerns, a review of the substance of the Intracorp report reveals that it fails to prove that an actual job was available to Hoskings. Moreover, the Intracorp report fails to provide any analysis regarding whether or not Hoskings had a reasonable opportunity to be employed at any particular job, due regard being had for his age, mental capacity, and education.

In assessing Hoskings's employability, Mr. Floyd, the author of the Intracorp report, ran three computer searches and two manual searches. In the first computer search, for occupations with skills that are directly transferrable from those of a firefighter, only one occupation emerged: surveillance-system monitor. The second computer search revealed three occupations that Hoskings could allegedly perform given some limited schooling or short term training. Finally, a third computer search was conducted which considered less closely related occupations using the same tools and machinery that Hoskings had used in his previous jobs. Two job titles emerged from this final computer search.

After the computer searches were finished, the report indicates that two manual searches were conducted. The first search considered Hoskings's entire work history, including his military experience. In this search, three occupations emerged. Finally, using the Utah Department of Employment Security publication, "Occupations in Demand," for the period of January–June, 1993, four job titles were identified.

Although the searches contained in the report identified several job titles that exist-

---

**8.** To the extent this interpretation raises a possible due process concern, as suggested by Salt Lake City Corporation at oral argument, we note that the Legislature has amended this statute to allow for a mandatory hearing regarding the issue of rehabilitation. Utah Code Ann. § 35–1–67 (1994) currently reads, in pertinent part, as follows:

(6)(a) A finding by the commission of permanent total disability is not final, unless otherwise agreed to by the parties, until:

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

(iii) the commission, after notice to the parties, holds a hearing, unless otherwise stipulated, to consider evidence regarding rehabilitation and to review any reemployment plan submitted by the employer or its insurance carrier under Subsection (6)(a)(ii) . . . .

ed in the Wasatch Front region, no evidence shows that these jobs were actually available to Hoskings. First, nowhere in the report is there a meaningful discussion of the duties required in the occupations described. The report lacks any analysis of whether Hoskings could actually perform the duties required in these occupations given his disabilities. Furthermore, the report fails to show that these particular occupations are actually available, i.e., that the demand for such jobs has not been fully met by the workforce. Moreover, no evidence is contained in the report that would indicate Hoskings himself had a reasonable opportunity to be employed in these jobs, i.e., assuming some of these positions are available in general, what is the realistic prospect that an employer will choose a man in his mid-fifties with a bad ankle and other health problems to fill one of them?

Although the report claims to have considered "job availability" in the computer searches, no discussion as to what is meant by this term is contained in the report. In describing the second manual search, the report alleges that the four occupations found are "reasonably available in southwestern or northeastern regions of Utah." However, the report contains no evidence that these particular jobs are actually available to a person with the same disabilities as Hoskings. It is insufficient for Salt Lake City Corporation to allege that a particular occupation is generally available to the public at large, without providing further evidence that the particular occupation is actually available to Hoskings. In other words, in order to sustain its burden under the odd lot doctrine, an employer must prove that an actual job is regularly and continuously available to the applicant, within a reasonable proximity of his or her usual residence or residences, and that the applicant has a reasonable opportunity to be employed in the particular job.[9]

Although we conclude that Salt Lake City Corporation failed in a more general way to meet its burden in this regard under the odd lot doctrine, we also conclude that the Commission's finding as to job availability was, at a more technical level, not based on a residuum of competent legal evidence.

The Commission based its finding that other work was available to Hoskings exclusively on the Intracorp report. However, as we indicated above, the Intracorp report is hearsay. Thus, although this report was admissible during the administrative proceedings held before the Commission, it cannot be the sole basis for the Commission's finding. Rather, the Commission must base its findings on legally competent evidence—a finding cannot be based solely on hearsay.

## CONCLUSION

In view of the statute regarding permanent total disability in effect at the time of Hoskings's injury, it may have been improper for the Commission to consider the Intracorp report on the issue of rehabilitation. If not, the Commission nonetheless erred, given the residuum rule, in finding that Hoskings could be rehabilitated. Further, Salt Lake City Corporation failed to sustain its burden under the odd lot doctrine to prove the existence of a regular, steady job that was actually available to Hoskings. Alternatively, in light of the residuum rule, the Commission erred in finding that Salt Lake City Corporation had met this burden.

Accordingly, we reverse the Commission's order and remand with instructions to reinstate the administrative law judge's decision.

DAVIS, Associate P.J., concurs.

BILLINGS, J., concurs in result.

9. Of course, the employer does not become an employment agency for the applicant. The employer is not required to find a particular position for an applicant, much less arrange for an interview. Rather, the employer must only prove that an actual job does exist in the usual residence or residences of the applicant and that he or she has a reasonable opportunity to be employed in that job.