2007 UT App 20

**SOUTHEASTERN UTAH ASSOCIATION OF LOCAL GOVERNMENTS,** Petitioner,

v.

**WORKFORCE APPEALS BOARD,** Respondent.

No. 20051175–CA.

Court of Appeals of Utah.

Jan. 25, 2007.

 

Samuel S. Bailey and Don M. Torgerson, Torgerson Law Offices PC, Price, for Petitioner.

Gary S. Gibbs, Department of Work Forces, Salt Lake City, for Respondent.

Before Judges DAVIS, McHUGH, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Southeastern Utah Association of Local Governments (SEUALG) seeks judicial review of the Workforce Appeal Board's (the Board) decision awarding claimant unemployment benefits. SEUALG asserts that claimant was discharged for just cause and is thus ineligible for unemployment benefits. We affirm.

## BACKGROUND

¶ 2 In 1984, claimant began working for SEUALG, and by 2005 she worked as a program manager for SEUALG's weatherization program. On April 5, 2005, claimant traveled out of town with her subordinates in connection with the weatherization program. That evening, claimant and two male subordinates, co-worker one and co-worker two, together with three other individuals, were socializing and drinking in claimant's motel room.[1] During the evening, claimant made a sexually explicit comment to co-worker one about his physique. Later, claimant approached co-worker one as he was sitting in a chair. She leaned over him and placed her face to his neck. When co-worker one asked her what she was doing she moved away. He stood up and walked across the room. Claimant apologized to him and gave him two hugs, grabbing his buttocks on the second hug. He did not respond to her hugs and soon after began to leave. As he was leav-

---

1. Claimant allegedly drank a beer with her dinner and approximately two or three liquor drinks in the motel room.

ing, claimant made another sexually explicit comment to him.

¶3 On the morning of April 11, 2005, the state program director for the weatherization program called SEUALG's executive director. He reported that there was a problem with claimant being "fallen down drunk" and that the executive director should look into the situation.[2] Later that morning, the executive director spoke with co-worker two and asked him whether anything had happened on the business trip. Co-worker two replied that nothing had happened. But later that evening, co-worker two told the executive director what he had witnessed on the evening of April 5.

¶4 On April 13, 2005, the executive director spoke with co-worker one and told him what he had learned from his discussion with co-worker two. Co-worker one agreed that the events had occurred. The executive director then placed claimant on administrative leave. This was the first time in approximately twenty years of claimant's employment with SEUALG that she had been disciplined. On April 15, 2005, the executive director contacted one other witness to the April 5 incident. That individual told the executive director that, although there was a lot of teasing with sexual innuendos, he saw nothing inappropriate about the evening. On April 18, 2005, the executive director met with claimant who denied engaging in the alleged conduct or making comments of a sexual nature. She admitted to giving both co-worker one and co-worker two a friendly hug. Claimant had previously received a copy of SEUALG's sexual harassment policy; however, she had not received any training related to sexual harassment. SEUALG discharged claimant for violating its sexual harassment policy.

¶5 Claimant filed a claim for unemployment benefits. The Department of Workforce Services (the Department) issued a decision that found claimant had been discharged without just cause and awarded her unemployment benefits. SEUALG requested review of the Department's decision.

The Adminstrative Law Judge (ALJ) affirmed the decision, finding that SEUALG had not established that claimant had knowledge that her conduct would be contrary to SEUALG's expectations and interests. SEUALG appealed the ALJ's decision to the Board. The Board affirmed the ALJ's decision, finding that although claimant had the requisite knowledge about her conduct, any future harm could have been avoided with a lesser form of discipline other than termination. SEUALG filed a petition for review with this court.

## ISSUE AND STANDARD OF REVIEW

■ ¶6 SEUALG asserts that the Board erred in finding that it discharged claimant without just cause. SEUALG contends that claimant's conduct violated a universal standard of behavior that justified her termination. "Whether an employee is terminated for just cause is a mixed question of law and fact." *Johnson v. Department of Employment Sec.*, 782 P.2d 965, 968 (Utah Ct.App.1989) (quotations and citation omitted). "When we review an agency's application of the law to a particular set of facts, we give a degree of deference to the agency." *Autoliv ASP, Inc. v. Department of Workforce Servs.*, 2001 UT App 198, ¶16, 29 P.3d 7 (quotations and citations omitted). "Accordingly, we will not disturb the Board's application of law to its factual findings unless its determination exceeds the bounds of reasonableness and rationality." *Johnson*, 782 P.2d at 968.

## ANALYSIS

¶7 SEUALG asserts that claimant was discharged for just cause because claimant was culpable of conduct so serious that her immediate termination was required to protect SEUALG's interest in preventing future sexual harassment. SEUALG argues that because claimant's conduct violated a universal standard of behavior the Board erred in finding that SEUALG had failed to establish

---

2. Apparently, the incident to which the state program director referred to occurred approximately a year earlier.

the culpability necessary for a just cause termination.

¶ 8 A claimant is ineligible for unemployment benefits if the claimant was discharged for "just cause." Utah Code Ann. § 35A–4–405 (2005). To establish just cause for a discharge, three elements must be satisfied: culpability, knowledge, and control. *See* Utah Admin. Code R994–405–202 (2005). In this case, the Board determined that SEUALG satisfied the knowledge and control prongs, but failed to establish claimant's culpability.

¶ 9 Board regulations define culpability as conduct that is "so serious that continuing the employment relationship would jeopardize the employer's rightful interest." Utah Admin. Code R994–405–202(1). Board regulations also describe the rules pertaining to culpability:

> If the conduct was an isolated incident of poor judgment and there was no expectation that it would be continued or repeated, potential harm may not be shown. The claimant's prior work record is an important factor in determining whether the conduct was an isolated incident or a good faith error in judgment. A long term employee with an established pattern of complying with the employer's rules may not demonstrate by a single violation, even though harmful, that the infraction would be repeated. In this instance, depending on the seriousness of the conduct, it may not be necessary for the employer to discharge the claimant to avoid future harm.

*Id.* The Board, in weighing the seriousness of claimant's conduct, took into account claimant's work history of over twenty years without incidents of prior discipline, warnings, or other occurrences of conduct that violated SEUALG's sexual harassment policy. The Board found that claimant's lengthy term of service demonstrated her ability to perform her job, as well as an ability to comply with SEUALG's legitimate expectations that she discontinue any conduct constituting sexual harassment. The Board concluded that a strong form of discipline short of termination would have prevented future harm to the employer.

¶ 10 SEUALG claims that the Board's decision that strict discipline would have prevented future harm was unreasonable and irrational because claimant's actions were so serious that they violated a universal standard of conduct. SEUALG asserts that this court, in *Autoliv ASP, Inc. v. Department of Workforce Services*, 2001 UT App 198, 29 P.3d 7, found actions similar to claimant's to be a violation of a universal standard of conduct. In *Autoliv*, this court held that the act of transmitting sexually explicit emails during business hours using an employer's computer equipment constituted a flagrant violation of a universal standard of behavior. *See id.* at ¶ 27.

¶ 11 Claimant's behavior in the present case, however, is factually distinguishable. Here, claimant's conduct took place outside of work hours, did not directly involve misuse of company resources, and was not expressly forbidden by a written employer policy.[3] Given the facts and circumstances of this case, we cannot determine that claimant's actions violated a universal standard of employee behavior.[4] The Board's determination that it was not necessary to discharge claimant to prevent future harm was within the limits of reasonableness and rationality, and SEUALG does not otherwise challenge the Board's rule on culpability. Accordingly, we will not disturb the Board's application of law to its factual findings. *See Johnson v. Department of Employment Sec.*, 782 P.2d 965, 968 (Utah Ct.App.1989).

---

**3.** SEUALG's sexual harassment policy prohibits, in pertinent part, requests for or threat of sexual relations or bodily contact. The policy also provides that "[i]t is not intended that this policy be construed as an intent . . . to regulate social interactions or relationships freely entered into by employees."

**4.** SEUALG also argues that behavior violating a universal standard of conduct satisfies both the knowledge and culpability prongs required to establish a just cause discharge. SEUALG has not provided any authority that supports the proposition that a single violation of a universal standard of conduct alone establishes culpability. However, because we do not hold that claimant's conduct violates a universal standard of conduct, we need not address this issue.

## CONCLUSION

¶ 12 The Board applied its rule on culpability, considered claimant's work history, and concluded that her lengthy term of service demonstrated her ability to perform her job and comply with SEUALG's expectations that she discontinue any conduct relating to sexual harassment. SEUALG has not demonstrated that the Board's decision was unreasonable or irrational, and accordingly we will not disturb the Board's application of law to its factual findings. Affirmed.

¶ 13 WE CONCUR: JAMES Z. DAVIS and CAROLYN B. McHUGH, Judges.