IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Provo City, a Utah municipal corporation, | ) ) ) | MEMORANDUM DECISION |
| | ) | Case No. 20110900-CA |
| Petitioner, | ) ) | |
| v. | ) ) | F I L E D (August 16, 2012) |
| Department of Workforce Services, Workforce Appeals Board; and Jason R. Smith, | ) ) ) ) | 2012 UT App 228 |
| Respondents. | ) ) ) | |

-----

Original Proceeding in this Court

Attorneys:     Robert D. West and Gary D. Millward, Provo, for Petitioner
                    Suzan Pixton, Salt Lake City, for Respondent Department of Workforce
                    Services, Workforce Appeals Board

-----

Before Judges Voros, Orme, and Thorne.

ORME, Judge:

¶1     Provo City seeks our review of a decision by the Workforce Appeals Board affirming the decision of the Utah Department of Workforce Services granting unemployment compensation to a terminated city employee. Provo City contends that the employee was terminated for just cause and, as a result, that he should be denied unemployment benefits. We decline to disturb the decision of the Board.

¶2     The employee worked as a power line repairman for Provo City for approximately eighteen years prior to his termination. In 2011, a thirteen-year-old girl who had stayed overnight in the employee's home while visiting his daughter reported that he had inappropriately touched her. The employee was arrested shortly thereafter and admitted that some inappropriate touching had occurred, albeit of a much less egregious sort than described by the victim. As a result of the charges against him, Provo City terminated the employee, explaining that because the employee was required to work in residential areas, Provo City would need to have him supervised if it continued to employ him. Provo City also worried about damage to its goodwill that might result if it retained the employee. Provo City did not provide any evidence of prior misconduct by the employee during his eighteen-year tenure and based its termination decision solely on this one incident.

¶3     The employee sought unemployment benefits following his termination, which Workforce Services granted after concluding that the employee was not terminated for "just cause" as that term is used in the unemployment compensation context.[1] Provo City appealed to the Workforce Appeals Board, which then held a hearing to determine whether the employee was terminated for just cause. At the hearing, the employee, who had still not been arraigned on any criminal charges, admitted to some inappropriate touching. The employee contended, however, that he did not realize that this off-duty, after-hours behavior in his own home could affect his employment as a power line repairman. Based on the information of record at the time of the hearing, the Board determined that the employee was not fired for just cause for purposes of receiving unemployment benefits and affirmed the grant of unemployment compensation.

¶4     The general rule that an employee who loses his or her job is entitled to unemployment benefits exists in order "to provide a cushion for the shocks and rigors of unemployment." *Gibson v. Department of Employment Sec.*, 840 P.2d 780, 783 (Utah Ct.

---

[1]"Just cause" is an unemployment compensation term of art. An otherwise legitimate termination may be without just cause for the limited purpose of determining unemployment compensation. *See Gibson v. Department of Employment Sec.*, 840 P.2d 780, 783 (Utah Ct. App. 1992) ("An employee's conduct may provide a legitimate basis for an employer to terminate the employee, without requiring denial of unemployment benefits.").

App. 1992) (citation and internal quotation marks omitted). For this reason "[t]he Utah Supreme Court has called for a liberal construction" of the rules dictating when an employee qualifies for benefits. *Id.* (citing *Logan Regional Hosp. v. Board of Review*, 723 P.2d 427, 429 (Utah 1986)). This liberal construction favors awarding benefits except when the employer can show that the employee's conduct is especially adverse to the employer's interests, i.e., when an employee has been fired for "just cause" as defined in the Utah Administrative Code. *See* Utah Admin. Code R994-405-201.

¶5     "Whether an employee is terminated for 'just cause' is a mixed question of law and fact." *Johnson v. Department of Employment Sec.*, 782 P.2d 965, 968 (Utah Ct. App. 1989) (citation omitted). "[W]e give a degree of deference to the agency" charged with "application of the law to a particular set of facts." *Autoliv ASP, Inc. v. Department of Workforce Servs.*, 2001 UT App 198, ¶ 16, 29 P.3d 7 (citation and internal quotation marks omitted). This deference makes good sense because the Board, being regularly faced with these situations and decisions and having a better feel for the norms of the modern workplace, is generally in a better position than we are to make such determinations. Accordingly, "[w]e will not disturb the Board's application of law to its factual findings unless its determination exceeds the bounds of reasonableness and rationality." *Pender v. Department of Workforce Servs.*, 2011 UT App 79, ¶ 3, 250 P.3d 1014.

¶6     To determine if a termination meets the "just cause" exception, we turn to the Utah Administrative Code, which outlines the circumstances under which a terminated employee may be precluded from receiving unemployment benefits to which he or she would otherwise be entitled. "Benefits will be denied if the claimant was discharged for just cause . . . . However, not every legitimate cause for discharge justifies a denial of benefits." Utah Admin. Code R994-405-201. *See supra* note 1. "To establish just cause for a discharge, . . . three elements must be satisfied," namely, culpability, knowledge, and control. Utah Admin. Code R994-405-202. Importantly, "[the employer] has the burden to prove there was just cause for discharging the claimant." *Id.* R994-405-203.

¶7     The Code explains that to establish culpability, "[t]he conduct causing the discharge must be so serious that continuing the employment relationship would jeopardize the employer's rightful interest." *Id.* R994-405-202(1). However, "[i]f the conduct was an isolated incident of poor judgment and there was no expectation it would be continued or repeated, potential harm may not be shown." *Id.* Additionally, "[t]he claimant's prior work record is an important factor in determining whether the

conduct was an isolated incident." *Id.* Thus, "[t]o determine if culpability has been established, adjudicators must balance 'the employee's past work record, the employee's length of employment, and the likelihood the conduct will be repeated against the seriousness of the offense and the harm to the employer.'" *Fieeiki v. Department of Workforce Servs.*, 2005 UT App 398, ¶ 2, 122 P.3d 706 (quoting *Gibson*, 840 P.2d at 784). Further, "when the employee has a clean work record and there is little chance the conduct will be repeated, a more serious offense *and* more harm to the employer will be necessary to show culpability."[2] *Id.* (emphasis added).

¶8 In *Southeastern Utah Association of Local Governments v. Workforce Appeals Board*, 2007 UT App 20, 155 P.3d 932, we considered the culpability of an employee who had been fired for sexually harassing another employee outside of work. We upheld as reasonable the Board's conclusion that the employee's twenty-year history of good behavior indicated that the sexual harassment was an isolated event and "demonstrated [the employee's] ability to perform her job, as well as an ability to comply with [the employer's] legitimate expectations that she discontinue any conduct constituting sexual harassment." *Id.* ¶ 9.

¶9 Further, we distinguished *Southeastern* from *Autoliv ASP, Inc. v. Department of Workforce Services*, 2001 UT App 198, 29 P.3d 7, in which we had agreed with the Board that sending sexually explicit emails at work was a "violation of a universal standard of behavior," *id.* ¶ 27, and thus, serious enough to establish culpability. *See Southeastern*, 2007 UT App 20, ¶ 10. We thought it significant that in *Southeastern*, unlike *Autoliv*, the employee's sexual harassment "took place outside of work hours, did not directly involve misuse of company resources, and was not expressly forbidden by a written employer policy." *Id.* ¶ 11 (footnote omitted). Consideration of the nexus between the behavior and the employment is consistent with the directive in Utah Administrative Code R994-405-207, which states that while "[d]isqualifying conduct is not limited to offenses that take place on the employer's premises or during business hours[,] . . . it is

---

[2]Provo City argues that the evidence was sufficient for the Board to conclude that the employee's actions were inappropriate or illegal, thus establishing culpability. Whether his actions were inappropriate or illegal may help establish one or more of the elements applicable to our determination, but in determining whether an employee was terminated for just cause, inappropriateness or illegality of the employee's actions, by itself, is not necessarily determinative.

necessary that the offense be connected to the employment in such a manner that it is a subject of legitimate and significant concern to the employer." Utah Admin. Code R994-405-207.

¶10　Here, Provo City bore the burden of showing that it had just cause under the Code to terminate the employee.[3] While the allegations against the employee at the time of termination were serious, the Board was not unreasonable in determining, based on the evidence then of record, that the allegations against the employee—even accompanied with the employee's admissions—did not establish conduct so serious as to jeopardize "the employer's rightful interest." *See id.* R994-405-201. The employee was a long-time employee of Provo City with, apparently, no prior instances of misconduct. Further, the allegations against the employee, like those in *Southeastern*, constituted an isolated incident wholly unrelated to his employment and which took place outside of work hours and in his home. Given these factors, we are not prepared to say that the Board exceeded the bounds of reasonableness in ruling that Provo City

---

[3]Provo City argues that the Board imposed the wrong standard of proof on the city, essentially requiring it to prove beyond a reasonable doubt that the accusations against the employee were true. Provo City assumes this because the Board noted that when the city terminated the employee, he had not been convicted yet of the crime for which he was charged and terminated. However, it is clear that the Board merely required substantial evidence from Provo City that it had just cause for terminating the employee. Provo City's obligation before the Board was not merely to prove that the employee acted inappropriately, but to prove that the city had just cause to terminate him. It was this "just cause" determination that needed to be established. To meet this burden, the city had to show not merely that wrongdoing had been alleged, but that the employee actually did something wrong. The Board saw a conviction as evidence that would have been helpful to Provo City in proving that the employee did something wrong because the conviction would have provided something more than a mere accusation and a limited admission of wrongful behavior. A conviction, then, would have been helpful, although not necessary, nor sufficient alone, to provide persuasive evidence that there was just cause to terminate the employee. And it seems that, with this in mind, the Board was merely commenting on the absence of such evidence.

had not established that it was required to terminate the employee in order to protect its interests.

¶11     Provo City argues that its image and goodwill would be significantly harmed if it continued to employ an accused sex offender.  It further argues that the employee's conduct was job-related because his job required him to work in residential neighborhoods.  As the employee apparently had a "clean work record" and there was no evidence that "the conduct [would] be repeated," Provo City had the additional burden to show that this was "a more serious offense *and*" that "more harm" would befall Provo City by retaining the employee. *Fieeiki*, 2005 UT App 398, ¶ 2 (emphasis added).  The Board apparently saw little risk of harm to the city in continuing to employ a long-time employee accused of one-time inappropriate touching of a minor and whose responsibilities do not take him into direct contact with children.  We cannot say that this determination was unreasonable in light of the record before the Board.[4]

¶12     As mentioned above, we are careful to distinguish between the propriety of terminating the employee and the employee's entitlement to unemployment benefits.  We do not suggest that Provo City was wrong to terminate the employee for his actions.  But the question before us is whether the employee comes within an exception to the general rule that allows employees who suddenly find themselves without work to claim unemployment benefits.  Reviewing the facts in light of the rules and case law that govern *this* question, we simply cannot conclude that the Board's decision was so unreasonable that we should interfere with it.[5]

---

[4]We acknowledge that on the question of whether there was "just cause" under the rule to terminate the employee, this was a close call.  Because of the deference that we give the Board in making these determinations, only disturbing its decisions when they are unreasonable, *see Pender v. Department of Workforce Servs.*, 2011 UT App 79, ¶ 3, 250 P.3d 1014, we also would have upheld the Board's decision here had it decided that there *was* just cause to terminate the employee so as to preclude his receipt of unemployment compensation.

[5]We note that the Board gave Provo City the opportunity to supplement the factual record with additional evidence regarding the employee's criminal case that came to light after the initial hearing.  Provo City declined to do so.

¶13    Because Provo City failed to meet its burden of establishing culpability as required by the Code, we decline to disturb the decision of the Workforce Appeals Board.[6]

_____
Gregory K. Orme, Judge

-----

¶14    WE CONCUR:

_____
J. Frederic Voros Jr.,
Associate Presiding Judge

_____
William A. Thorne Jr., Judge

---

[6]Because the employer must satisfy all three requirements to avoid paying unemployment compensation on the ground the employee was fired for just cause, *see* Utah Admin. Code R994-405-202, Provo City's failure to establish culpability means we need not consider the "knowledge" and "control" elements.