**2015 UT App 93**

## THE UTAH COURT OF APPEALS

HOLLY DAVIS,
Petitioner,
*v.*
DEPARTMENT OF WORKFORCE SERVICES AND IFCO SYSTEMS,
Respondents.

Memorandum Decision
No. 20131109-CA
Filed April 16, 2015

Original Proceeding in this Court

Michael E. Bulson, Attorney for Petitioner

Amanda B. McPeck, Attorney for Respondent
Department of Workforce Services

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES STEPHEN L. ROTH and JOHN A. PEARCE
concurred.

CHRISTIANSEN, Judge:

¶1      Holly Davis seeks review of a decision of the Department
of Workforce Services' Workforce Appeals Board (the Board)
affirming a denial of unemployment-insurance benefits. The
Board denied benefits to Davis because it concluded that she had
been discharged from her employment for just cause. We decline
to disturb the Board's ruling.

¶2      Davis worked as a truck driver for IFCO Systems between
October 2011 and September 2013. On April 17, 2012, Davis was
backing a truck with a trailer onto a dock when the trailer door
swung open and hit a roll-up door. The incident caused $1,700 in

damage, and Davis was "disciplined for substandard work." Davis received a written warning stating, "You must take care when driving. You should always double check trailer doors and ensure they are secured before backing onto a dock."[1]

¶3 On August 16, 2013, Davis was delivering a trailer to a repair shop when she backed the trailer into a shop customer's trailer, causing approximately $2,500 in damage. The repair shop notified IFCO of the accident. Soon thereafter, the facility general manager of IFCO spoke with Davis and showed her photos of the damage to both trailers. Davis said she was unaware she had hit another trailer, but she recognized she "must have done it" and apologized for the incident. The manager talked to Davis again some time later, "letting her know the cost of the damage that [IFCO] had to repair on that trailer."

¶4 On August 29, 2013, Davis was involved in a third accident. Davis and another truck driver were attempting to park their trucks in a delivery area when the trucks collided and Davis's "mud flap caught [the other truck's] bumper and pulled [the] bumper forward." Later that day, Davis was issued a written warning for the August 16 accident. This form stated that the facility general manager had "made [Davis] aware of [the August 16] incident and informed her [that] because of the cost of the damage she would receive discipline" and that "[a]ny

---

1. Davis denies that she ever received a written warning for this incident. The Board, relying on IFCO's assistant general manager's testimony, found that Davis received a written warning after the April 17, 2012 incident. However, the Board ultimately did not rely on this finding in determining that Davis had knowledge of the conduct her employer expected of her. Accordingly, we need not decide whether there was substantial evidence to support this factual finding, because it has no bearing on our decision.

future issues will result in additional disciplinary action up to and including termination."

¶5     On September 3, 2013, Davis received a write-up for the August 29 incident. The write-up stated,

> This is [Davis's] 2nd incident in less than 30 days in which [she] hit another vehicle causing vehicle damage. After investigation of this incident and based on witness statements [Davis] could have prevented this incident. Due to the frequency of these incidents and the property damage caused [Davis's] employment will be terminated effective 9/3/13.

IFCO discharged Davis that same day.

¶6     Davis applied for unemployment benefits after her termination. Her claim for benefits was denied. Davis appealed that decision, and an Administrative Law Judge (the ALJ) held a telephonic hearing on the matter. The ALJ affirmed the denial of unemployment benefits and found that IFCO had established just cause for Davis's termination. Davis sought review of the ALJ's decision. The Board affirmed the ALJ's decision denying benefits. Davis now petitions this court for review.

¶7     Davis argues that the Board erred in concluding that IFCO established just cause to terminate her employment. Whether an employee was terminated for just cause is a fact-like mixed question, "and we apply a deferential standard of review to a lower tribunal's resolution of this issue." *Sawyer v. Department of Workforce Servs.*, 2015 UT 33, ¶¶ 16, 25. The Board's findings of fact, "if supported by evidence, are conclusive," Utah Code Ann. § 35A-4-508(8)(e) (LexisNexis 2011), and we will allow those findings to stand unless "the findings are not supported by substantial evidence," *Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997). Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Record v. Workforce Appeals Bd.*, 2011 UT App 340, ¶ 19, 263 P.3d 1210 (citation and internal quotation marks omitted).

¶8    An employee is ineligible for unemployment insurance benefits if the Board concludes that the employee was discharged for just cause. Utah Code Ann. § 35A-4-405(2)(a) (LexisNexis Supp. 2013); *Autoliv ASP, Inc. v. Department of Workforce Servs.*, 2001 UT App 198, ¶ 17, 29 P.3d 7. "To establish 'just cause,' three elements must be present: culpability, knowledge, and control." *Autoliv*, 2001 UT App 198, ¶ 17; *see also* Utah Admin. Code R994-405-202. "The employer must establish each of the three elements . . . for the Board to deny benefits." *Gibson v. Department of Emp't Sec.*, 840 P.2d 780, 783 (Utah Ct. App. 1992). Here, Davis challenges only the Board's determination regarding the element of knowledge.

¶9    Davis argues that IFCO failed to establish the knowledge element because, while she knew that "incidents resulting in damages would have a negative effect on her employment," she did not "anticipate . . . being fired, when there had been no clear explanation or written policy stating that a future incident would result in termination." According to Davis, to satisfy the knowledge element, "a clear explanation of expected behavior" must contain a "clear warning that a further incident would result in immediate termination."

¶10    Davis's interpretation of the knowledge element is not borne out by the language of the rule. Rule R994-405-202(2) of the Utah Administrative Code defines the element of knowledge:

> The claimant must have had *knowledge of the conduct the employer expected*. There does not need to be evidence of a deliberate intent to harm the employer; however, it must be shown the claimant

should have been able to anticipate the negative effect of the conduct. Generally, knowledge may not be established unless the employer gave *a clear explanation of the expected behavior* or had a written policy, except in the case of a violation of a universal standard of conduct. A specific warning is one way to show the claimant had knowledge of the expected conduct. After a warning the claimant should have been given an opportunity to correct the objectionable conduct. If the employer had a progressive disciplinary procedure in place at the time of the separation, it generally must have been followed for knowledge to be established, except in the case of very severe infractions, including criminal actions.

Utah Admin. Code R994-405-202(2) (emphases added).

¶11    Here, the element of knowledge is not dependent on whether Davis knew what type of accidents or what number of accidents would result in discipline or termination. Rather, Davis need only have known what conduct was expected of her and that her failure to adhere to that conduct would be detrimental to IFCO. The rule explains that "[t]here does not need to be evidence of a deliberate intent to harm *the employer*; however, it must be shown the claimant should have been able to anticipate *the negative effect of the conduct." Id.* (emphases added). Thus, "the negative effect" contemplated by the rule is not the effect the conduct might have on the employee's work status, but rather the negative effect or harm caused to the employer by the conduct.[2] We therefore agree with the Board

--------

2. Though Davis does not dispute the element of culpability, rule R994-405-202's definition of culpability comports with the language used to define knowledge. To establish the employee's culpability, "[t]he conduct causing the discharge must be so

(continued...)

that the knowledge element "does not require that a claimant know her job is in jeopardy, merely that she understands her actions are harmful to the Employer's rightful interests." The Board found that Davis "should have been able to anticipate that repeatedly causing property damage was harmful to [IFCO's] rightful interests." Davis does not directly challenge this finding. Indeed, she recognizes that the facility general manager spoke to her shortly after the August 16 accident, that he showed her pictures of the damage to the trailers, and that she "accepted responsibility" for the accident.[3] Accordingly, substantial evidence supported the Board's finding that Davis should have been able to anticipate that IFCO's rightful interests would be harmed if Davis continued to cause accidents and property damage.

¶12    Davis next argues that the element of knowledge was not supported by substantial evidence because she did not receive a "clear explanation of expected behavior." The knowledge element generally "may not be established unless the employer gave a clear explanation of the expected behavior." Utah Admin. Code R994-405-202(2). Davis's supervisor reviewed the August

_____

(…continued)

serious that continuing the employment relationship would *jeopardize the employer's rightful interest*." Utah Admin. Code R994-405-202(1) (emphasis added). This standard is consistent with our conclusion that the "negative effect of the conduct" for purposes of knowledge is the harm or adverse effect *to the employer* or its rightful interests, not to the employee or her interests. *See* Utah Admin. Code R994-405-201 ("Benefits will be denied if the claimant was discharged for just cause or for an act or omission in connection with employment . . . which was . . . adverse to the employer's rightful interest.").

3. According to the evidence presented by IFCO, Davis's three accidents caused approximately $7,200 in damages.

incident with Davis and showed her photographs of the damage. The Board found that "[Davis] should have realized the accident was unacceptable based upon that conversation alone, even if the general manager did not specifically state [that] she would receive a written warning." In her brief, Davis concedes that she knew the accident "'was unacceptable based upon that conversation alone.'" Yet after this concession, Davis claims that she nevertheless did not receive "a clear explanation of expected behavior, because the facility general manager did not inform her that another accident would result in termination. However, as we determined above, the rule requires only that the employee receive an explanation of the "conduct the employer expected," not an explanation of the consequences an employee may face if he or she fails to perform as expected. *See supra* ¶ 11. Davis's concession that she knew the accident was unacceptable based on her conversation with the facility general manager demonstrates that she knew what conduct was expected by the employer and had received a clear explanation of this expected behavior after meeting with the facility general manager. Additionally, Davis's own testimony that "[o]f course, [IFCO] wouldn't want us to have incidents I'm sure" demonstrates that she knew the specific conduct—i.e., not having accidents and causing property damage—her employer expected of her.[4]

---

4. Davis does not challenge the Board's determination that the elements of culpability and control were satisfied. While the rule does not require that an employee have knowledge of the particular consequences that may arise from her conduct, such as termination, we note that the elements of culpability and control do protect employees from being discharged without just cause in cases where their conduct was only minor or infrequent. For example, Utah Administrative Rule R994-405-202(1) provides that "[i]f the conduct was an isolated incident of poor judgment and there was no expectation it would be continued or repeated, potential harm may not be shown." Utah Admin. Code R994-405-202(1). And the employer must prove that the conduct was

(continued...)

¶13    Davis further argues that she had no opportunity to change her conduct. After issuing a warning, the employer must give the employee "an opportunity to correct the objectionable conduct." Utah Admin. Code R994-405-202(2). We are not persuaded that Davis had no opportunity to correct her conduct. The Board found, and Davis admits, that the facility general manager spoke to her about her August 16 accident shortly after it occurred. Because we conclude that this conversation was a clear explanation of expected behavior, Davis has failed to demonstrate that she was not provided an opportunity to correct "the objectionable conduct" before she was terminated for another accident two weeks later.

¶14    Finally, Davis claims that IFCO failed to follow its own "progressive disciplinary procedure." "If the employer had a progressive disciplinary procedure in place at the time of the separation, it generally must have been followed for knowledge to be established, except in the case of very severe infractions, including criminal actions." *Id.* However, there is no evidence in the record that IFCO had a progressive discipline policy in place during Davis's employment. Davis asserts that IFCO had a progressive discipline policy because the forms used by IFCO to keep track of an employee's disciplinary record state, "Describe discipline action taken including actions prescribed to correct problem, disciplinary action taken, and further actions to be taken should future problems develop." According to Davis, this "progressive disciplinary procedure" was not followed and "[i]t

_____

(…continued)

within the claimant's control because "[i]solated instances of carelessness or good faith errors in judgment are not sufficient to establish just cause for discharge" and only "continued inefficiency, repeated carelessness or evidence of a lack of care expected of a reasonable person in a similar circumstance may satisfy the element of control if the claimant had the ability to perform satisfactorily." *Id.* R994-405-202(3).

may be inferred from this wording that not every infraction should trigger termination." And even assuming this was IFCO's disciplinary policy, IFCO followed it. The employer's "disciplinary policy" described future disciplinary actions, stating that "[a]ny future issues will result in additional disciplinary action up to and including termination." Davis was not terminated on her first infraction; her discipline-action report shows that she committed approximately six offenses while employed by IFCO, three of which resulted in property damage to her employer. Davis was only terminated after she was involved in the August 29 accident a mere two weeks after the August 16 accident.

¶15    Accordingly, the Board's finding that IFCO established Davis's knowledge of the conduct expected of her is supported by substantial evidence. We decline to disturb the Board's decision.

_____