**2019 UT App 191**

## THE UTAH COURT OF APPEALS

UTAH PAIUTE TRIBAL HOUSING AUTHORITY INC.,
Petitioner,

*v.*

DEPARTMENT OF WORKFORCE SERVICES,
WORKFORCE APPEALS BOARD,
Respondent.

Opinion
No. 20190164-CA
Filed November 21, 2019

Original Proceeding in this Court

James W. Jensen, Attorney for Petitioner

Amanda B. McPeck, Attorney for Respondent

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

HAGEN, Judge:

¶1      Utah Paiute Tribal Housing Authority Inc. (the Housing Authority) seeks judicial review of a Workforce Appeals Board (the Board) decision that a former employee (the Employee) was terminated without just cause and is thus entitled to unemployment benefits. Because the Board's findings and conclusions are supported by substantial evidence, we decline to disturb the Board's decision.

BACKGROUND[1]

¶2     This case concerns the dismissal of the Employee from her employment with the Housing Authority, a Utah corporation that assists members of the Paiute Indian Tribe of Utah in obtaining affordable housing.[2] During the course of her employment, the Employee reported to the Housing Authority's executive director. The executive director, in turn, reported to the Board of Commissioners (the Commissioners), an organization comprised of representatives from the different bands of the Paiute Indian Tribe. Although the Paiute Indian

---

1. In reviewing a decision of the Board, "we view the facts in the light most favorable to the [Board's] findings" and recite them accordingly. *See Evolocity, Inc. v. Department of Workforce Services*, 2015 UT App 61, ¶ 2 n.2, 347 P.3d 406.

2. "To provide and maintain housing for the needy, Congress enacted the Housing Act of 1937." *Housing Auth. of Kaw Tribe of Indians of Okla. v. City of Ponca City*, 952 F.2d 1183, 1185 (10th Cir. 1991); *accord* 42 U.S.C. § 1437 (1988). Consistent with this mandate, the Department of Housing and Urban Development (HUD) has promulgated regulations for the creation of Indian housing authorities. *Id.* Indian housing authorities, such as the petitioner, may receive federal grants or apply to HUD for loans that enable the housing authorities to develop or maintain low-income housing for members of the tribes they serve. *See Marceau v. Blackfeet Housing Auth.*, 540 F.3d 916, 928 (9th Cir. 2008) (discussing how the Housing Act empowers Indian housing authorities to apply to HUD for loans); *Amerind Risk Mgmt. Corp. v. Malaterre*, 585 F. Supp. 2d 1121, 1127 (D.N.D. 2008) (discussing an Indian housing authority that received federal grants to maintain reservation housing), *rev'd on other grounds*, 633 F.3d 680 (8th Cir. 2011).

Tribe has its own tribal council (the Tribal Council) that authorizes the Housing Authority's funding, the Tribal Council does not fall directly within the Housing Authority's chain of command.

¶3      About one year into her employment with the Housing Authority, the Employee began to suspect that the executive director was misusing Housing Authority funds. She believed that the Commissioners were reflexively supportive of the executive director and would not take complaints about him seriously. The Employee also testified that other individuals had previously complained to the Tribal Council about the executive director's spending, but the Tribal Council had indicated that "it was powerless to do anything without proof of wrongdoing."

¶4      The Employee began collecting documents that she believed supported her suspicions that the executive director was misusing funds. She obtained a copy of a per diem check from the Housing Authority made out to the executive director. She also acquired a copy of the executive director's travel arrangements and corporate credit card statement, intending to use the documents to show that the executive director had inflated the amount of his per diem check and misused Housing Authority funds on hotels and rental cars.

¶5      The Employee reported her suspicions to the Tribal Council and provided the supporting documents. As a result, the Tribal Council cancelled a scheduled meeting with the Commissioners and provided the Commissioners with copies of the documents. The Commissioners responded by alerting the executive director of the allegations made by the Employee. The executive director then terminated the Employee for violating the Housing Authority's non-disclosure policy, which the Employee had previously agreed to, by revealing confidential information.

¶6    Following her termination, the Employee made a claim for unemployment benefits. The Utah Department of Workforce Services denied her claim, finding that the Employee was discharged for "just cause." The Employee appealed to an administrative law judge (the ALJ), and the ALJ upheld the original decision. The Employee appealed the ALJ's decision to the Board, which found that the Employee was terminated without just cause. The Board accordingly reversed the determination of the ALJ and held that the Employee was entitled to unemployment benefits. The Housing Authority now seeks judicial review of the Board's decision.

## ISSUE AND STANDARD OF REVIEW

¶7    The Housing Authority challenges the sufficiency of the evidence to support the Board's determination that the Employee was terminated without just cause. This court "will uphold the Board's decision if its factual findings and determinations are supported by substantial evidence when viewed in light of the whole record." *Needle Inc. v. Department of Workforce Services*, 2016 UT App 85, ¶ 6, 372 P.3d 696 (cleaned up). "Substantial evidence is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion and is more than a mere scintilla but something less than the weight of the evidence." *Id.* (cleaned up). Additionally, this court defers to "the Board's credibility determinations and its resolution of conflicts in the evidence." *Id.*

## ANALYSIS

¶8    "An employee is ineligible for unemployment insurance benefits if the Board concludes that the employee was discharged for just cause." *Davis v. Department of Workforce Services*, 2015 UT App 93, ¶ 8, 348 P.3d 352; *see also* Utah Code

Ann. § 35A-4-405(2)(a) (LexisNexis 2015). "To establish 'just cause,' three elements must be present: culpability, knowledge, and control." *Autoliv ASP, Inc. v. Department of Workforce Services*, 2001 UT App 198, ¶ 17, 29 P.3d 7; *see also* Utah Admin. Code R994-405-202. Here, the Board concluded that the Housing Authority failed to show all three elements—including culpability. Because "the employer must satisfy all three requirements to avoid paying unemployment compensation on the ground the employee was fired for just cause," and because the employer has failed to establish culpability, we need not consider the "knowledge" and "control" elements. *See Provo City v. Department of Workforce Services*, 2012 UT App 228, ¶ 13 n.6, 286 P.3d 936 (citing Utah Admin. Code R994-405-202).

¶9    To establish culpability, "[t]he conduct causing the discharge must be so serious that continuing the employment relationship would jeopardize the employer's rightful interest." Utah Admin. Code R994-405-202(1). However, "[i]f the conduct was an isolated incident of poor judgment and there was no expectation it would be continued or repeated, potential harm may not be shown." *Id.* "The claimant's prior work record is an important factor" in this determination because "[a]n employer might not be able to demonstrate that a single violation, even though harmful, would be repeated by a long-term employee with an established pattern of complying with the employer's rules." *Id.*

¶10    The Board's determination that the Employee's conduct did not pose a serious risk to the Housing Authority's rightful interests is supported by substantial evidence. While the Housing Authority has an interest in maintaining the confidentiality of its financial records, this is not a typical breach of confidentiality case. Rather, the Employee, rightly or wrongly, suspected fraud, and the reporting of such suspicions is not adverse to an employer's rightful interests, but is very much

consistent with them. Further, it was reasonable for the Employee to believe that the Tribal Council was an appropriate entity to report her suspicions to. After all, the Housing Authority was distributing money *on behalf of the tribe* and required the Tribal Council's authorization to operate. The Employee also had reason to believe that the Commissioners would not take her suspicions seriously if she reported the suspected fraud to them.

¶11   Even if the Employee made errors of judgment either in reporting to the wrong entity or by disclosing confidential information that was not strictly necessary to blow the whistle on suspected wrongdoing, such an error would, at most, amount to an isolated instance of poor judgment. This is especially true given the fact that the Employee did not have any other instances of misconduct during her time at the Housing Authority.

¶12   The Housing Authority argues that the Employee did not act in good faith because she (1) was aware of and agreed to the Housing Authority's nondisclosure policy, (2) "surreptitiously obtained confidential and privileged information and documentation" that was outside the scope of her employment, (3) turned over that information and documentation to the Tribal Council without authorization, and (4) sent derogatory text messages about the executive director. But the Board weighed the evidence and ultimately rejected the Housing Authority's arguments. And "it is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences." *Dinger v. Department of Workforce Services*, 2013 UT App 59, ¶ 20, 300 P.3d 313 (cleaned up). Where "the evidence is disputed, as it was here, we defer to the Board's assessment of credibility and resolution of conflicting evidence." *See id.* (cleaned up).

¶13    Accordingly, the Housing Authority is unable to satisfy the culpability prong of the just cause analysis, and we decline to disturb the Board's decision.

CONCLUSION

¶14    The Board's determination that the Housing Authority failed to establish culpability is supported by substantial evidence. Therefore, the Housing Authority has failed to show that the Employee was terminated for just cause, and we decline to disturb the Board's decision that the Employee is entitled to unemployment benefits.

———————